**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

COMMITTEE ON THE JUDICIARY )
)
Plaintiff, )
)
v. )      **Case No. 1:08-cv-00409 (JDB)**
)
HARRIET MIERS, *et. al* )
)
Defendants. )
_____)

**MOTION OF AMICI CURIAE REPRESENTATIVES**
**JOHN BOEHNER, ROY BLUNT, LAMAR SMITH AND CHRIS CANNON**

**FOR LEAVE TO FILE A REPLY MEMORANDUM OF AMICI CURIAE IN**
**OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
**AND IN SUPPORT OF DISMISSAL WITHOUT PREJUDICE**

Amici-movants Representatives John Boehner, Roy Blunt, Lamar Smith, and Chris

Cannon (the "House Amici") respectfully request the Court's leave to file a reply memorandum

in opposition to Plaintiff's motion for partial summary judgment and in support of dismissal

without prejudice, for the reasons discussed below.  Pursuant to Local Civil Rule 7(m), the

undersigned counsel for the House Amici has conferred with counsel for the plaintiff and for the

defendants.  Counsel for the defendants takes no position on this motion.  Counsel for the

plaintiff has communicated that plaintiff does not consent to this motion.

**ARGUMENT**

As discussed in their original motion for leave to participate as amici in this case, the

House Amici are the Republican Leader of the United States House of Representatives, the

Republican Whip, the Ranking Member of the House Committee on the Judiciary (the

"Committee"), and the Ranking Member of the Committee's Subcommittee on Commercial and

Administrative Law.  In conjunction with their motion for leave to participate as amici curiae, the House Amici filed a memorandum with the court in opposition to the Plaintiff's motion for partial summary judgment.  In that memorandum, the House Amici submitted for numerous reasons that the case is not ripe and that, even if ripe, the case would not merit discretionary relief under the Declaratory Judgment Act.[1]

In their responsive memoranda and briefs, the Plaintiff and its supporting amici-movants variously demonstrated a misunderstanding of the position of the House Amici, of the relevant facts in this matter, and of the facts and the law regarding whether this case is ripe or could merit discretionary relief.  Because the issues presented are of significant importance to all three branches of the federal government, and particularly to the institutional and oversight prerogatives of the Congress, it is important that the Court have before it complete briefing accurately presenting the issues.  Accordingly, out of their great interests in this matter, and so that the Court has a full and correct understanding of the facts and the law concerning the case and the House Amici's position, the House Amici seek the Court's leave to file a reply memorandum in opposition to Plaintiff's partial motion for summary judgment and in support of dismissal without prejudice.  As was the case with their initial motion for leave, the House Amici submit that they abundantly satisfy the standard for participation as amici curiae, and in support of the instant motion the House Amici renew all of their initial points and authorities.[2]

---

[1] See Memorandum Amici Curiae of Representatives John Boehner, Roy Blunt, Lamar Smith and Chris Cannon in Opposition to Plaintiff's Motion for Partial Summary Judgment  (May 9, 2008).
[2] See Unopposed Motion of Amici Curiae Representatives John Boehner, Roy Blunt, Lamar Smith and Chris Cannon for Leave to File a Memorandum Amici Curiae in Opposition to Plaintiff's Motion for Partial Summary Judgment at 2-3 (May 9, 2008).

## CONCLUSION

For all of the above reasons, the House Amici request leave of the Court to file the

attached Reply Memorandum of Amici Curiae Representatives John Boehner, Roy Blunt, Lamar

Smith and Chris Cannon in Opposition to Plaintiff's Motion for Partial Summary Judgment and

in Support of Dismissal Without Prejudice.  A proposed order is submitted herewith.

Respectfully submitted,

/s/  Daniel M. Flores
DANIEL M. FLORES
(D.C. Bar No. 418586)
Republican Chief Counsel, Subcommittee on
Commercial and Administrative Law
ZACHARY N. SOMERS
Republican Counsel
Committee on the Judiciary
United States House of Representatives
Washington, D.C. 20515
(202) 225-6906
Email: daniel.flores@mail.house.gov

Of Counsel:

JO-MARIE ST. MARTIN
(D.C. Bar No. 417264)
General Counsel to the Republican Leader
MELANIE LOONEY
Counsel to the Republican Whip
SEAN P. MCLAUGHLIN
Republican Chief Counsel,
   Committee on the Judiciary
United States House of Representatives
Washington, DC 20515
(202) 225-6906

Dated: June 12, 2008                    Counsel for Amici Curiae

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 12, 2008, the foregoing motion for leave, a proposed order granting leave and the Reply Memorandum of Amici Curiae Representatives John Boehner, Roy Blunt, Lamar Smith and Chris Cannon in Opposition to Plaintiff's Motion for Partial Summary Judgment and in Support of Dismissal Without Prejudice was electronically filed with the Court's CM/ECF system, which will generate automatic service of such filing upon all parties registered to receive such notice.

/s/ Zachary N. Somers
Zachary N. Somers

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                        )
COMMITTEE ON THE JUDICIARY                              )
                                                        )
            Plaintiff,                                  )
                                                        )
            v.                                          )        **Case No. 1:08-cv-00409 (JDB)**
                                                        )
HARRIET MIERS, et al.                                   )
                                                        )
            Defendants.                                 )
_____)


**REPLY MEMORANDUM OF AMICI CURIAE REPRESENTATIVES
JOHN BOEHNER, ROY BLUNT, LAMAR SMITH AND CHRIS CANNON**

**IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT AND IN SUPPORT OF DISMISSAL WITHOUT PREJUDICE**

                                        DANIEL M. FLORES
                                           Counsel of Record
                                        ZACHARY N. SOMERS
                                        Committee on the Judiciary, Republican Staff
                                        United States House of Representatives
                                        Washington, DC 20515
                                        (202) 225-6906

Of Counsel:

JO-MARIE ST. MARTIN
General Counsel to the Republican Leader
MELANIE LOONEY
Counsel to the Republican Whip
SEAN P. MCLAUGHLIN
Republican Chief Counsel,
   Committee on the Judiciary
United States House of Representatives
Washington, DC 20515
(202) 225-6906

June 12, 2008                            Counsel for Amici Curiae

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ i

INTRODUCTION ....................................................................................................................1

ARGUMENT............................................................................................................................2

    I.   The Plaintiff Has Failed To Establish That The Complaint Is Ripe ....................................2

        A.       The House Amici Have Brought Forward Facts Refuting Ripeness ......................2

        B.       The Plaintiff Has Not Met the House Amici's Facts and Has Misconceived the Ripeness Inquiry ...........................................................................................4

        C.       The Plaintiff's Arguments Are Straw Men............................................................7

        D.       The Plaintiff's Contention that Counts I and II Are Ripe Is Unpersuasive ..........11

        E.       The Plaintiff Incorrectly Alleges Inconsistency with the Minority Views ...........11

    II.  Even If The Case Were Ripe, No Declaratory Relief Would Be Justified .......................13

CONCLUSION......................................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

<u>Allen v. Wright</u>, 467 U.S. 737 (1984)...................................................................................4

<u>Coalition for Underground Expansion v. Mineta</u>, 333 F.3d 193 (D.C. Cir. 2003)........................2

<u>Grand Lodge of Fraternal Order of Police v. Ashcroft</u>, 185 F. Supp. 2d 9 (D.D.C. 2001) ............2

<u>In re Sealed Case</u>, 121 F.3d 729 (D.C. Cir. 1997) .................................................................1, 3, 8

<u>In re Wolverine Radio Co</u>., 930 F.2d 1132 (6th Cir. 1991).........................................................11

<u>Liverpool, New York & Philadelphia S. S. Co. v. Commissioners of Emigration</u>,
     113 U.S. 33 (1885)..............................................................................................................5

<u>Nat'l Park Hospitality Ass'n v. Dep't of Interior</u>, 538 U.S. 803 (2003).........................................5

<u>Nixon v. Sirica</u>, 487 F.2d 700 (D.C. Cir. 1973)..........................................................................1, 3

<u>Ohio Forestry Ass'n, Inc. v. Sierra Club</u>, 523 U.S. 726 (1998)....................................................5

<u>Ruhrgas AG v. Marathon Oil Co</u>., 526 U.S. 574 (1999) ..............................................................6

<u>Senate Select Committee on Presidential Campaign Activities v. Nixon</u>,
     498 F.2d 725 (D.C. Cir. 1974) (<u>Senate Select Comm. II</u>) ...........................................1, 3, 6, 8

<u>Toca Producers v. FERC</u>, 411 F.3d 262 (D.C. Cir. 2005) .............................................................6

<u>United States v. AT&T</u>,

     551 F.2d 384 (D.C. Cir. 1976) ("<u>AT&T I</u>") .........................................................................15

     567 F.2d 121 (D.C. Cir. 1977) (<u>AT&T II</u>)......................................................................1, 15

<u>United States v. House of Representatives</u>, 556 F. Supp. 150 (D.D.C. 1983)................................5

<u>Vander Jagt v. O'Neal</u>, 699 F.2d 1166 (D.C. Cir. 1983) ..............................................................5

**LEGISLATIVE MATERIALS**

154 Cong. Rec. H 948 (2008) .......................................................................................................3

Report of the Committee on the Judiciary of the House of Representatives together with
     Additional Views and Minority Views is <u>available</u> at
     http://judiciary.house.gov/Media/PDFS/ContemptReport071105.pdf .......................... passim

**SECONDARY AUTHORITIES**

13A C. Wright, A. Miller & E. Cooper, <u>Federal Practice and Procedure</u> § 3532.1 (2008).............4

## INTRODUCTION

Several matters are now clear in this case.  First, the parties have placed in issue separate and weighty questions tempting new law on the constitutional boundaries of all three branches of government – legislative, executive and judicial.  Second, the facts prove these issues unripe, and would render any declaratory relief improvident.  Third, the Committee and its amici-movants are unwilling to address these facts.  Rather, they seek to draw the Court into a hypothetical case – one that was refuted, not revealed, by the Committee's investigation.  It is to assist with the resolution of that hypothetical case, as opposed to the one the facts present here, that they seek the intervention of this Court.

The Court should reject the invitation.  Tempting as many of the issues may be, the Court should dismiss the case as either unripe or unworthy of the exercise of equitable discretion, leaving for another day any further resolution of the boundaries between the branches.  Representatives Boehner, Blunt, Smith, and Cannon (collectively, the "House Amici") emphasize that it is not their position that congressional subpoenas should be regarded lightly, or that the case would be dismissal-worthy if there were a "demonstrated, specific need" for the Defendants' evidence.  On the contrary, they argue for dismissal – without prejudice – strictly because *in this case, on this record, at this time,* there is not yet a "demonstrated, specific need" for the Defendants' information.  In re Sealed Case, 121 F.3d 729, 753-55, 760 (D.C. Cir. 1997); accord Senate Select Committee on Presidential Campaign Activities v. Nixon, 498 F.2d 725, 731-32 (D.C. Cir. 1974) (Senate Select Comm. II); Nixon v. Sirica, 487 F.2d 700, 717 (D.C. Cir. 1973).  The Congress' oversight and institutional prerogatives – including the Congress' ability to enlist the courts in the enforcement of its subpoenas – are far too important to be risked absent the required "demonstrated, specific need" for the information sought through the instant subpoenas.  Cf. United States v. AT&T, 567 F.2d 121, 130 (D.C. Cir. 1977) (AT&T II) ("[I]t

1

was a deliberate feature of the constitutional scheme to leave the allocation of powers unclear in certain situations.").

## ARGUMENT

I.    The Plaintiff Has Failed To Establish That The Complaint Is Ripe.

A.    The House Amici Have Shown That This Case Is Not Ripe.

The burden of establishing jurisdiction rests at all times upon the Plaintiff.  Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  When facts are put forward that, if undisputed, would defeat jurisdiction, it is incumbent upon a plaintiff to demonstrate that, notwithstanding those facts, jurisdiction indeed lies.  See Coalition for Underground Expansion v. Mineta, 333 F.3d 193, 198 (D.C. Cir. 2003) ("[W]here necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.") (citations omitted).

In their opening brief, the House Amici set forth a host of facts supporting the conclusion that this case is unripe, because it remains at best speculative whether the Plaintiff will ever be able to show a "demonstrated, specific need" for evidence from the Defendants.[1]  Prominent among those facts are:

- direct, credible evidence from central witnesses demonstrating that Defendant Miers and other White House officials did not seek the dismissal of U.S. Attorneys for improper partisan purposes;

- the Plaintiff's failure to exhaust reasonable accommodations to obtain voluntary evidence from the Defendants;

- the multitude of other, key investigative steps the Plaintiff has yet to take;

---

[1]  See Memorandum Amici Curiae of Representatives John Boehner, Roy Blunt, Lamar Smith and Chris Cannon in Opposition to Plaintiff's Motion for Partial Summary Judgment at 3-19 (May 9, 2008) ("House Amici Br.").

- the nearly seven months of dormancy in the investigation following the Committee's contempt vote, during which any or all of those steps could have been taken, but were not;

- the bipartisan Senate Ethics Committee's conclusion that no wrongdoing occurred in Senator Pete Domenici's contacts with former U.S. Attorney David Iglesias;

- the availability of the Inspector General's and the Office of Professional Responsibility's investigation as an alternative and more comprehensive vehicle for discovery of the facts; and

- the Committee Chairman's admission on the House floor that the Plaintiff has no evidence against the Defendants, and that the matter remains essentially a fishing expedition.[2]

See House Amici Br. at 5-6, 8-19.

On this record, only speculation can support a conclusion that the Plaintiff has the requisite need for information from the Defendants. Unless and until such a need can clearly be shown, there will be no basis for the Court to entertain the Plaintiff's request. See In re Sealed Case, 121 F.3d at 760 (denying the grand jury's need for the privileged material "at this stage"); Senate Select Comm. II, 498 F.2d at 732 (denying the Committee's need for the privileged material for lack of a "*present sense* need for the materials subpoenaed") (emphasis added); accord Nixon v. Sirica, 487 F.2d 700, 717 (D.C. Cir. 1973) (holding that the President's claim of privilege was overcome only "in the face of the *uniquely powerful showing* made by the Special Prosecutor . . . that the subpoenaed tapes contain evidence *peculiarly necessary* to the carrying out of [the grand jury's] vital function – evidence *for which no effective substitute is available*") (emphasis added). This is especially the case with regard to the Executive's claim that the Defendants, who represent the innermost circle of presidential advisors, are absolutely immune from compelled congressional testimony. Only in the face of a demonstrated, specific need for

---

[2] See 154 Cong. Rec. H 948, 954 (2008) ("[W]e don't have any evidence. We aren't accusing them of anything, sir. We're merely seeking the documents that could be relevant to the determination of whether the Department of Justice has been politicized.").

information can the Executive sustain a claim to privilege *solely* on the basis of a claim to absolute immunity. Only when confronting such an established need should the Court address the absolute immunity theory, which lies at the center of the Executive's need for counsel and the balance of power between the political branches.

      B.      The Plaintiff Has Not Met the House Amici's Facts and Has Misunderstood the <u>Ripeness Inquiry.</u>

In its responsive brief, the Plaintiff fails to refute the facts that the House Amici have brought forward. Instead, the Plaintiff asserts that this case is ripe, at least as to Counts I and II of the Complaint, simply because "the Committee issued subpoenas to both Defendants; Defendants disregarded their subpoenas; the House held both Defendants in contempt; and the Attorney General refused to present the matter to a grand jury." Plaintiff's Opp. at 8-10, 32-33.[3] Plaintiff's theory is in essence no more than that these counts are ripe because the Plaintiff wants the information, and the Plaintiff does not yet have it. As for the rest, the Plaintiff submits that the House Amici simply do not understand the ripeness doctrine. Plaintiff's Opp. at 32.

To the contrary, it is the Plaintiff who has misunderstood the inquiry. The ripeness doctrine is not concerned simply with whether there is a dispute. It is concerned with whether there is *a genuine need for the Court to resolve* a dispute. <u>See</u> 13A C. Wright, A. Miller & E. Cooper, <u>Federal Practice and Procedure</u> § 3532.1 (2008) (ripeness serves "[t]he central perception . . . that courts should not render decisions absent a genuine need to resolve a real dispute"). Nor is the ripeness doctrine a rigid one to be applied in a strictly mechanical fashion, as the Plaintiff seeks. <u>See</u>, <u>e.g.</u>, <u>Allen v. Wright</u>, 467 U.S. 737, 750 (1984) ("'All of the doctrines that cluster about Article III – not only standing but mootness, ripeness, political question, and the like – relate in part, and in different though overlapping ways, to an idea, which is more than

---

[3] Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss and in Reply to Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment (May 29, 2008) ("Plaintiff's Opp.").

an intuition but less than a rigorous and explicit theory, about the constitutional and prudential

limits to the powers of an unelected, unrepresentative judiciary in our kind of government.'")

(quoting <u>Vander Jagt v. O'Neal</u>, 699 F.2d 1166, 1178-79 (D.C. Cir. 1983) (Bork, J.,

concurring)).

Accordingly, drawing "both from Article III limitations on judicial power and from

prudential reasons for refusing to exercise jurisdiction," courts should apply the ripeness doctrine

asking several questions.  <u>Nat'l Park Hospitality Ass'n v. Dep't of Interior</u>, 538 U.S. 803, 808

(2003).  Under Article III, they should ask, not just whether there is a dispute, but:  "(1) whether

delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would

inappropriately interfere with further administrative action; and (3) whether the courts would

benefit from further factual development of the issues presented."  <u>Ohio Forestry Ass'n, Inc. v.

Sierra Club</u>, 523 U.S. 726, 733 (1998).  In the broader realm of general judicial prudence, they

are called upon "to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship

to the parties of withholding court consideration."  <u>Nat'l Park Hospitality Ass'n</u>, 538 U.S. at 808.

In every case, including this one, these questions should be asked searchingly.  But in this

case, there is not only the ordinary need to question ripeness.  There is a paramount interest in a

strict insistence on ripeness in all of its aspects.  The constitutional and institutional questions on

which the parties ask the Court to rule – including the Article III standing questions placed in

issue by the Defendants – are of serious consequence to the institutional prerogatives of the

political branches.  The Court should look thoroughly and carefully to ensure that there is a real

and genuine need to answer those questions, including the question of standing.  <u>Cf.</u> <u>Liverpool,

New York & Philadelphia S. S. Co. v. Commissioners of Emigration</u>, 113 U.S. 33, 39 (1885)

("[We are bound] never to anticipate a question of constitutional law in advance of the necessity

of deciding it."); <u>United States v. House of Representatives</u>, 556 F. Supp. 150, 152 (D.D.C.

1983) ("Courts have a duty to avoid unnecessarily deciding constitutional issues.").  Indeed, the standing questions raised by the Defendants sound two, separate constitutional alarms.  They call not only for the resolution of issues under Article III, but for answers that would redraw the rules of engagement between the Article I and the Article II branches.

Because of these factors, and because standing itself sounds in justiciability, it is imperative that the Court first ask whether the facts of the case, examined under settled law, render the case nonjusticiable on other grounds.  See Toca Producers v. FERC, 411 F.3d 262, 265 n.1 (D.C. Cir. 2005) ("[B]ecause the ripeness requirement, even in its prudential aspect, likewise calls for a threshold inquiry that does not involve an adjudication on the merits, it likewise may be resolved without first addressing whether the producers have Article III standing."); accord Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999) ("It is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits.").

The House Amici urge that under the facts presented and the settled law, the case is clearly unripe.  The Court would benefit substantially from further factual development, which could only help to clarify whether the Plaintiff may ever be able to satisfy the "demonstrated, specific need" test.  Delayed review, moreover, would not cause hardship to the Plaintiff.  The Plaintiff has a number of options and can readily propound legislation on the basis of the record it already has assembled – particularly given Department officials' direct testimony that Defendant Miers and other White House officials never sought the dismissal of the U.S. Attorneys for improper partisan reasons.  See Senate Select Comm. II, 498 F.2d at 732 ("While fact-finding by a legislative committee is undeniably a part of its task, legislative judgments normally depend more on the predicted consequences of proposed legislative actions and their political acceptability, than on precise reconstruction of past events; Congress frequently

legislates on the basis of conflicting information provided in its hearings.").  Delayed review also would not impose a hardship on the Defendants, and judicial intervention could interfere inappropriately with the ability of the Inspector General and the Office of Professional Responsibility to conclude their investigation and present their results to an unbiased public.  For these and all of the reasons the House Amici have submitted for the Court's consideration, the Court should find the Plaintiff's Complaint not yet fit for judicial resolution.

C.    The Plaintiff's Arguments Are Straw Men.

The Plaintiff does not genuinely contest the facts that the House Amici have presented.  Rather, it seeks to ignore or sidestep them, while offering no specific, record facts of its own.[4]

The Plaintiff's arguments, however, are straw men.  The House Amici do not argue that the Plaintiff must first turn over every investigative stone, no matter how small, before seeking enforcement of its subpoenas.  See Plaintiff's Opp. at 33.  They argue that the Plaintiff has failed to pursue *clearly important* investigative steps.  Until those important steps are exhausted, it can at best be no more than speculative whether the Committee will ever be able to satisfy the "demonstrated, specific need" test with regard to information from the Defendants.  These steps include, for example, such basic procedures as interviewing David Iglesias and John McKay – steps that the Senate Ethics Committee, the Inspector General and the Office of Professional Responsibility undertook long ago, but that the Plaintiff has failed to undertake.[5]  They also include steps such as interviewing the New Mexico citizens who allegedly sought to obtain Mr.

_____

[4] In its response, the Plaintiff offers for factual support only a blunderbuss citation to the entirety of H. Rep. 110-423.  See Plaintiff's Opp. at 32-33.  This fails to meet the House Amici's facts with specificity.  Moreover, it includes reference to the Minority Views which specifically refute the Plaintiff's position in this case, as well as the roughly 700 pages of evidentiary excerpts the Committee Minority included to support its views.  Indeed, the Minority Views and their supporting evidence comprise the vast majority of H. Rep. 100-423 (pp. 99-858).

[5] Ironically, in its response, the Plaintiff cites to statements from Mr. Iglesias' recently published book on this affair, – but the Plaintiff is unable to cite to the transcript of an interview with Mr. Iglesias, because no interview has been taken.  See Plaintiff's Opp. at 9 and n.2.  This alone should refute the Plaintiff's suggestion that it "has already obtained all available information from Department sources."  Add to this the Plaintiff's failures to interview Mr. McKay and to pursue other Department sources, see, e.g., House Amici Br. at 11-14, and the Plaintiff's assertion in its brief that it "has already obtained all available information from Department sources" is patently false.  Plaintiff's Opp. at 32-33.

7

Iglesias' dismissal, as well as interviewing numerous Department officials who might have shed substantial light on issues concerning Mr. McKay. These are but a few of the important steps the Plaintiff could have taken, but did not. Until they are taken, there is no way to tell other than by speculation whether there is a *specific* need for information from the Defendants that is *truly* important and *cannot* be obtained sufficiently from other sources. In re Sealed Case, 121 F.3d at 756 ("[T]o overcome the presidential privilege it is necessary to demonstrate with specificity why it is likely that the subpoenaed materials contain important evidence and why this evidence, or equivalent evidence, is not practically available from another source.").

Nor is it the House Amici's position that the Plaintiff should simply have "re-interviewed Department witnesses" who had "little or no information the first time around." Plaintiff's Opp. at 33. The House Amici stress that the Plaintiff *never* interviewed Mr. Iglesias, Mr. McKay, the New Mexico citizens, and other important witnesses. They also draw the Court's attention to the fact that the Plaintiff has ignored critical information from the direct testimony of Kyle Sampson, Alberto Gonzales, and Monica Goodling that the White House was not involved improperly in the U.S. Attorneys' dismissals. The Plaintiff must come to grips with the fact that the key witnesses in the matter – Mr. Sampson, Mr. Gonzales and Ms. Goodling – all testified that *the White House did not* seek the dismissal of any of the U.S. Attorneys for improper reasons. These witnesses had the *key information* concerning the White House's role – and that information disproved the Plaintiff's theory. Indeed, that information suggests that the Defendants' information would be merely duplicative. See In re Sealed Case, 121 F.3d at 754 ("[P]rivileged presidential communications should not be treated as just another source of information."); Senate Select Comm. II, 498 F.2d at 732 ("[T]he Select Committee's immediate oversight need for the subpoenaed tapes is . . . merely cumulative.").

8

If the Plaintiff would but credit this information, the House Amici believe that it would "obviate[] the need for subpoenas to Ms. Miers and Mr. Bolten."  Plaintiff's Opp. at 33.  But the key point, with regard to ripeness, is that the Plaintiff does not yet have information from numerous, important, unexhausted sources that alone might help it to overcome the existing evidence against the theory of improper White House involvement.  It is the failure to exhaust these important steps that renders it, at best, speculative for the court to try to identify a "demonstrated, specific need" for the Defendants' information that cannot be satisfied by evidence from other sources.

Similarly, the House Amici do not ask that the Plaintiff "continue beating its head against a wall once the White House decided to stonewall the Committee."  Plaintiff's Opp. at 33.  The House Amici's point is that from the outset of the investigation, the White House offered voluntary testimony and documents, which the Plaintiff refused to accept under the terms offered or other reasonable conditions.  The Plaintiff, like its counterpart on the House Committee on Oversight and Government Reform, should have accepted the White House's offer or fashioned a compromise, which could have resolved this matter long ago.  When it did not, it should have taken the other important steps that could have clarified whether it could meet the necessary legal threshold to overcome the assertion of executive privilege.  Because the Plaintiff did not take those steps, the Plaintiff is asking the Court to speculate and prematurely ignore the privilege asserted.

For these and the other reasons discussed by the House Amici, the case at this point rests where the Committee Chairman conceded it to be on the House floor.  The Committee has no evidence against the Defendants, and the Plaintiff is essentially on a fishing expedition.  Accordingly, the Court should dismiss the Complaint as unripe.  The Plaintiff urges a different view, notwithstanding the Committee Chairman's prior concession.  But it does do not do so on

the basis of specific, record facts supporting the conclusion that the case is ripe.[6]  Neither do

Plaintiff's supporting amici-movants offer such facts.[7]  On the contrary, the Plaintiff's and its

amici-movants' briefs rest on conclusory assertions about a hypothetical case, rooted even at this

late date largely in newspaper reports and conjecture rather than the actual facts and the

investigative record in this case.

It is imperative that the Court be guided by the real facts, and not misled by provocative

but unsupported conjecture, as it scrutinizes this case for ripeness.  Those facts are to be found in

the House Amici's opening brief, the Minority Views offered in H. Rep. 110-423, and the

roughly 700 pages of evidentiary exhibits attached to the Minority Views.  The House Amici

implore the Court to consider those facts carefully, and not to rest on the Plaintiff's and its amici-

movants' unsubstantiated assertions.  As stated above, it is *not* the House Amici's position that

congressional subpoenas should be lightly regarded, as the Mann Amici Brief erroneously

suggests.[8]  It is precisely out of the House Amici's concern that Congress' institutional and

oversight prerogatives and the weight of congressional subpoenas *not* be undermined by an

unnecessary judicial decision that the House Amici urge the Court to dismiss this case unless it is

certainly ripe.

---

[6] Rather Plaintiff's Opposition at 32 cites broadly to H. Rep. 100-423 to support its ripeness argument; Chairman Conyers' and Chairwoman Sanchez' Additional Views, which formed the heart of the Committee majority's discussion of the facts in that report, cited over 90 times to newspaper reports, editorials, blogs, non-committee reports, and other, similar sources, rather than to the investigative record compiled through the Committee's and Subcommittees hearings, interviews, and document reviews.  See Plaintiff's Opp. at 8-10, 32-33; see also H. Rep 100-423 at 11-77 (Additional Views of Chairman Conyers and Subcommittee Chair Sánchez, or the "Additional Views").

[7] See U.S. Attorneys Amici Br. at 2-11, 15; Brief of Senators Daniel K. Inouye and Sheldon Whitehouse, Former Senator William S. Cohen and Former Representatives Mickey Edwards and Thomas B. Evans, Jr. as *Amici Curiae* in support of Plaintiff's Motion for Partial Summary Judgment at 2, 5, 13, 17-18, 20-21 (May 29, 2008); Memorandum of *Amici Curiae* in Opposition to Defendants' Motion to Dismiss at 11, 15-16 (May 29, 2008) (Thomas E. Mann, et al.) (the "Mann Amici Brief"); Rutherford Br. at 3-5, 7-8, 20 (relying on both unsupported assertions and portions of the Additional Views that in turn rely substantially on conjecture and information from newspapers, blogs, etc.).

[8] Mann Amici Brief at 13.

D.     The Plaintiff's Contention that Counts I and II Are Ripe Is Unpersuasive.

Seeking to preserve its partial motion for summary judgment, the Plaintiff argues that Counts I and II are ripe, leaving for another day the question of whether the remaining counts are ripe.  See Plaintiff's Opp. at 32.  This argument, however, is unpersuasive.

First, the Defendants have moved to dismiss the Complaint in its entirety, and the House Amici have argued ripeness in support of a dismissal without prejudice of all counts.  The Court, moreover, has a continuous obligation to assure itself of jurisdiction over all that lies before it, not simply the immediate subject of a given motion.  See Fed. R. Civ. P. 12(h)(3); In re Wolverine Radio Co., 930 F.2d 1132, 1137 (6th Cir. 1991) (holding that federal courts "have a continuing obligation to examine their subject matter jurisdiction throughout the pendency of every matter before them"), cited in Rogers v. Boots, 1992 U.S. Dist. LEXIS 10318 (D.D.C. 1992).  Whatever the Court finds to be outside its jurisdiction, it should dismiss.  The entire Complaint thus hangs in the balance, and hangs in the balance now, not just Counts I and II.

Further, Plaintiff's Complaint is not one in which Counts I and II can be ripe, while the rest of the counts are not.  All of the counts are interrelated, and Counts I and II can be meaningful only if Plaintiff can establish a "demonstrated, specific need" for the information it ultimately seeks from the Defendants.  Everything that really matters in this, particular case comes down to whether there is a "demonstrated, specific need" for that information – unless the case is being pursued strictly as an exercise in political theater.

E.     The Plaintiff Incorrectly Alleges Inconsistency with the Minority Views.

Finally, the Plaintiff incorrectly asserts that the House Amici's position is inconsistent with the Committee Minority's views, as expressed in H. Rep. 110-423.  Plaintiff's Opp. at 33. The Committee Minority did indeed conclude in that report that it was unnecessary for the Committee to continue to pursue testimony and documents from the Defendants; however, that

was because the Committee Minority believed that the record already established sufficiently that, whatever may have happened in the U.S. Attorney dismissals, the White House had not asserted its influence to achieve improper partisan ends. See Plaintiff's. Ex. 1 at 138-40, 154-55 (Minority Views). On that basis, the Committee Minority concluded that it was time for the Committee to move on to other business. Id. The House Amici's position now is in no way inconsistent with that view. It is simply that, if the Plaintiff is to insist on pursuing the Defendants further, the Court should insist that the Plaintiff first exhaust investigative steps sufficient to remove any speculation.

The Plaintiff likewise erroneously claims that the House Amici's position is inconsistent with the Minority Views' mention of the alternative path of civil enforcement. Before the Committee, the Committee Majority presented only a criminal contempt resolution. The Committee Minority vigorously disagreed that such a route was prudent and urged that it would be better for the Committee to at least consider the civil enforcement route, rather than a criminal or contempt route. Id. at 140-41. The Minority also submitted – as here – that the best course would be to accept the White House's offer of voluntary information. Id. at 141.

Had a civil option been presented in committee, the Committee Minority would surely have addressed it and set forth its final opinion concerning the merits or demerits of such a resolution. As it was, a civil resolution never materialized until the extraordinary proceedings before the House Rules Committee. That committee's ruling and the House Majority's management of the matter on the House floor precluded *full, direct and separate* debate on the civil resolution. See House Amici Br. at 9. Once again, the Plaintiff's position rests on speculation – this time regarding what the Committee Minority's final position would have been on a civil resolution wedded to and backstopping a criminal contempt resolution, had one been offered under normal legislative procedure.

II.     <u>Even If The Case Were Ripe, No Declaratory Relief Would Be Justified.</u>

In its opening brief, the House Amici also argued that the case, if ripe, was unworthy of

declaratory relief.  The House Amici rested their argument on several factors, including, for

example:  the myriad failures of the Plaintiff to exhaust other, available means of gathering

information; the substantial amount of harm to the House's institutional and oversight

prerogatives unnecessarily risked by the Plaintiff's request for a declaratory judgment; the

necessity of a demonstrated, specific need for the Defendants' information before the rendering

of a judgment on the absolute immunity theory; and the minimal likelihood that a declaratory

judgment will settle the controversy between the parties.  House Amici Br. at 32-40.

As with the House Amici's ripeness arguments, the Plaintiff essentially leaves these

arguments unmet.  It attempts instead to redefine the controversy as one regarding the absolute

immunity theory and the other objects of its partial motion for summary judgment, arguing that

the relief it seeks will settle that controversy.  <u>See</u> Plaintiff's Opp. at 48-50.

The Plaintiff's argument is misplaced.  The controversy is not one over, as Plaintiff now

seeks to put it, the absolute immunity theory, a request for a privilege log, and various bits of

unprivileged information.  It is a controversy over whether the White House injected improper

partisan considerations, such as politically motivated reprisal, into the decisions to dismiss U.S.

Attorneys.[9]  The partial summary judgment motion the Plaintiff has filed is but a means to the

---

[9] <u>See</u>, <u>e.g.</u>, Complaint at ¶¶ 1-5; Memorandum of Points and Authorities in Support of Plaintiff's Motion for Partial Summary Judgment at 1 (April 10, 2008) ("At the heart of this case is an investigation . . . into whether political considerations at the Department of Justice . . . and the White House undermined the fair and impartial administration of the federal criminal justice system and led to the unprecedented forced resignations in mid-Administration of nine United States Attorneys") ("Plaintiff's Summ. Judg. Mem."); <u>id.</u> at 3 ("To fulfill its roles as 'the grand inquest of the state,' the Congress must have access to testimony and documents relevant to its investigation.  For 'the administration of the Department of Justice – whether its functions were being properly discharged or were being neglected or misdirected . . . [i]is one on which legislation could be had and would be materially aided by the information which [the Congress's] investigation [i]s calculated to elicit . . . ." (citations omitted)); <u>id.</u> (asserting standing on the ground that "[t]he Committee has been concretely injured because it has been deprived of information critical to the completion of its Investigation . . . ."); <u>id.</u> ("The Committee's 'information injury' is likely to be redressed by the declaratory and injunctive relief it seeks, as such relief will enable the Committee to inform itself fully prior to rendering meaningful conclusions and proposing necessary

pursuit of that controversy – a procedural device with which the Plaintiff hopes to remove the absolute immunity theory from its path, obtain the Defendants' appearance before the Committee, and obtain question-by-question, document-by-document assertions of privilege that it can then contest and bring before this Court under continuing supervisory orders, until the gravamen of this case is exhausted.  See, e.g., Plaintiff's Summ. Judg. Mem. at 2-3, 5-7; Complaint at ¶¶ 12, 70-102; id. at pp. 32-35 (prayer for relief).

As suggested above, and as set forth in the Minority Views, their supporting evidentiary exhibits, and the House Amici's prior brief, the controversy over the White House's role in the U.S. Attorney dismissals is hypothetical.  But it is *that* hypothetical controversy the Complaint seeks to sustain – not a preliminary sparring battle over the absolute immunity theory and a brace of ancillary issues.  No amount of redefining the controversy to save the instant partial summary judgment motion can avoid that.

Further, the Plaintiff's opposition brief only reemphasizes a larger point made in the House Amici's prior brief.  No matter what the facts, no matter whether the Defendants appear before the Committee, and no matter what the Defendants' testimony and documents say, the Court can have no reasonable assurance that the Plaintiff will treat this controversy as settled. The Plaintiff already has direct, highly credible evidence that the White House did not inject improper politics into the U.S. Attorney dismissals.  The Plaintiff, however, ignores this evidence.  It even goes so far as to imply that it does not exist, in the face of a challenge to the Court's jurisdiction.  See Plaintiff's Opp. at 32-33.  The Plaintiff is confronted with the Committee Chairman's statement on the floor that the Committee has no evidence against the Defendants, and that this lawsuit is essentially a fishing expedition.  Nevertheless, the Plaintiff still paints the case for the Court as if there were grave evidence pointing to nefarious White

---

corrective legislation.  It is for these reasons that the U.S. House of Representatives . . . has specifically authorized the Committee to seek and obtain declaratory and injunctive judicial relief.").

House involvement, and as if it is critical that the Defendants be forced to disgorge their information.  The Plaintiff carries a burden to establish jurisdiction, and is faced with a host of facts showing that the case is unripe.  Yet it fails even to rebut those facts, all the while urging the Court to resolve a host of issues that could irreparably undercut the entire House's institutional and oversight prerogatives.  These facts all point to one conclusion – that even if the Court's orders were to yield the Plaintiff direct testimony and documents from the Defendants, there can be no assurance that the controversy will not continue.

One aspect of Plaintiff's opposition brief, however, does suggest a means to resolve this controversy, short of dismissal.  That is the Plaintiff's insistence that the single, most important precedent in this case is United States v. AT&T, 551 F.2d 384 (D.C. Cir. 1976) ("AT&T I").  In that case, the D.C. Circuit adopted a circumspect, practical approach that encouraged additional inter-branch accommodation, enabling the dispute to be resolved without a decision re-drawing the lines between the political branches, and without laying down rigid rules to govern their disputes.  See AT&T I, 551 F.2d at 394–95;[10] accord AT&T II, 567 F.2d at 130–33.  Indeed, the D.C. Circuit underscored in the AT&T litigation that it was imperative for the courts to foster accommodation:  "Negotiation between the two branches should . . . be viewed as a dynamic process *affirmatively furthering the constitutional scheme*.  Correspondingly, a court judgment *that reflects the compromises achieved through negotiation* marks an allocation of powers determined in furtherance of the constitutional process."  AT&T II, 567 F.2d at 130 (emphasis added).

---

[10] To quote from the D.C. Circuit's apt reasoning: "Before moving on to a decision of such nerve-center constitutional questions, we pause to allow for further efforts at a settlement.  We think that suggestion is particularly appropriate in this case and may well be productive.  The suitability of a judicial suggestion of compromise rather than historic confrontation is indicated by Nixon v. Sirica, 159 U.S.App.D.C. 58, 487 F.2d 700 (1973), where we proposed that the counsel and the President consider the possibility of resolving their differences 'by procedures other than those set forth in either District Judge Sirica's opinion or the briefs of the parties.'  Id. at 81, 487 F.2d at 723.  In the present case our efforts may be more fruitful. The legislative and executive branches have a long history of settlement of disputes that seemed irreconcilable."  Id. at 394.

Taking into account the discretionary nature of declaratory relief, and taking the Plaintiff's emphasis as a touchstone, if it does not dismiss the case without prejudice, the Court should at most follow the example set by the D.C. Circuit in <u>AT&T I</u>, and chart a course under which the Parties can exhaust further attempts at accommodation before judicial intervention is granted.  If the Court finds the matter ripe, and that it can thus retain the case, perhaps no more would be needed than to grant the parties an additional 90 days to pursue accommodation, including renewed efforts to pursue voluntary testimony and document production from the Defendants.  Interim status reports to the Court, coupled with a status conference at the 90-day mark, might be all that is needed to then bring this matter to a close.[11]

## <u>CONCLUSION</u>

For all of the above reasons, the Court should dismiss the Plaintiff's Complaint as unripe or deny declaratory relief.[12]

Respectfully submitted,

<u>/s/  Daniel M. Flores</u>
DANIEL M. FLORES
(D.C. Bar No. 418586)
Counsel of Record
Republican Chief Counsel, Subcommittee on
Commercial and Administrative Law
ZACHARY N. SOMERS
Republican Counsel
Committee on the Judiciary
United States House of Representatives
Washington, D.C. 20515
(202) 225-6906
Email: daniel.flores@mail.house.gov

---

[11] <u>Cf</u>. <u>AT&T I</u>, 551 F.2d at 395 ("We remand the record to the District Court for further proceedings during which the parties and counsel are requested to attempt to negotiate a settlement. We order the District Court to report to us concerning the progress of these negotiations within three months of the date of this opinion, unless the executive and congressional parties jointly either ask for an extension or report an earlier impasse.").
[12] The House Amici note that, if the Court solicits or allows oral argument from any amici, they would request an equivalent amount of time with which to present oral argument.

<u>Of Counsel</u>:

JO-MARIE ST. MARTIN
  (D.C. Bar No. 417264)
  General Counsel to the Republican Leader
MELANIE LOONEY
  Counsel to the Republican Whip
SEAN P. MCLAUGHLIN
  Republican Chief Counsel,
    Committee on the Judiciary
United States House of Representatives
Washington, DC 20515
(202) 225-6906

Dated: June 12, 2008                              Counsel for Amici Curiae

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

—————————————————————————

| | |
|---|---|
| COMMITTEE ON THE JUDICIARY | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    **Case No. 1:08-cv-00409 (JDB)** |
| | ) |
| HARRIET MIERS, et al. | ) |
| | ) |
| Defendants. | ) |

—————————————————————————

### [PROPOSED] ORDER

The Court, this ____day of ____, 2008, hereby grants Representatives John Boehner, Roy

Blunt, Lamar Smith, and Chris Cannon leave to file a reply memorandum *amici curiae* in

opposition to the plaintiff's motion for partial summary judgment and in support of dismissal

without prejudice.

IT IS SO ORDERED.


_____
John D. Bates
United States District Judge