# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| COMMITTEE ON THE JUDICIARY, UNITED STATES HOUSE OF REPRESENTATIVES, | ) ) ) ) ) |
| *Plaintiff*, | ) ) ) |
| v. | ) ) |
| HARRIET MIERS, *et al.*, | ) ) ) |
| *Defendants*. | ) ) |

Case No. 1:08-cv-00409 (JDB)

## BRIEF OF FORMER UNITED STATES ATTORNEYS
### AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFF'S MOTION
### FOR PARTIAL SUMMARY JUDGMENT

Lawrence S. Robbins, D.C. Bar # 420260
Donald J. Russell, D.C. Bar # 474445
Alan D. Strasser, D.C. Bar # 967885
Brian A. Pérez-Daple, D.C. Bar # 979681

ROBBINS, RUSSELL, ENGLERT, ORSECK,
UNTEREINER & SAUBER LLP
1801 K Street, N.W., Suite 411L
Washington, D.C. 20006
(202) 775-4500

Counsel for Former United States Attorneys

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

THE INTERESTS OF THE AMICI CURIAE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.    There Is A Compelling Constitutional Interest In Ensuring That Prosecutors Exercise Their
      Powers Without Regard To Partisan Considerations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.   The Relief Requested By Plaintiff's Motion For Partial Summary Judgment Will Provide
      Essential Facts That Are Needed To Evaluate Claims Of Executive Privilege. . . . . . . . . 11

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Avery Dennison Corp.* v. *Four Pillars,*
190 F.R.D. 1 (D.D.C. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Berger* v. *United States,*
295 U.S. 78 (1935). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Possible Violations of 18 U.S.C. §§ 371, 641, 1503,*
564 F.2d 567 (D.C. Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Sealed Case,*
121 F.3d 729 (D.C. Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Investigating Comm. of the Judicial Council of the Eleventh Circuit* v. *Mercer,*
783 F.2d 1488 (11th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Nixon* v. *Sirica,*
487 F.2d 700 (D.C. Cir. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Northrop Corp.* v. *McDonnell Douglas Corp.,*
751 F.2d 395 (D.C. Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Senate Select Comm. on Presidential Campaign Activities* v. *Nixon,*
498 F.2d 725 (D.C. Cir. 1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States Civil Serv. Comm'n* v. *Nat'l Ass'n of Letter Carriers,*
413 U.S 548 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

*United States* v. *Armstrong,*
517 U.S. 456 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10

*United States* v. *Nixon,*
418 U.S. 706 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States* v. *Reese,*
561 F.2d 894 (D.C. Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## TABLE OF AUTHORITIES—continued

Page(s)

*United States* v. *Thornton*,
   733 F.2d 121 (D.C. Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13


**RULES**

FED. R.C IV. P. 26(b)(5) Advisory Committee Note to 1993 Amendments. . . . . . . . . . . . . . . . . 14


**OTHER AUTHORITIES**

Robert H. Jackson, *The Federal Prosecutor*,
   31 J. CRIM. L. & CRIMINOLOGY 3 (1940), *available at*
   http://www.roberthjackson.org/Man/theman2-7-6-1. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

John McKay, *Train Wreck at the Justice Department: An Eyewitness Account*,
   31 SEATTLE U. L. REV. 265 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Michael B. Mukasey, Remarks Prepared for Delivery by Attorney General Michael B. Mukasey
   at the Commonwealth Club of San Francisco (Mar. 27, 2008), *available at*
   http://www.usdoj.gov/ag/speeches/2008/ag_speech_080327.html. . . . . . . . . . . . . . . . . 7

*Principles for Assuring Legitimacy to the Crucial Decisions of the Department of Justice*,
   The Constitution Project, *available at* http://lawprofessors.typepad.com/
   whitecollarcrime_blog/files/constitution_project_principles_for_assuring_
   legitimacy_nov_2007.pdf. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Principles of Federal Prosecution,* § 9-27.260, *available at* http://www.usdoj.gov/
   usao/eousa/foia_reading_room/usam/title9/27mcrm.htm#9-27.260. . . . . . . . . . . . . . . . 7

*Recognizing the Importance of the Position of the United States Attorney*,
   National Association of Former United States Attorneys (Nov. 10, 2007),
   *available at* http://lawprofessors.typepad.com/whitecollarcrime_blog/
   files/nafusa_resolution_nov_2007.pdf. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

iii

## THE INTERESTS OF THE AMICI CURIAE

George Beall, Alan Bersin, William Braniff, Zach Carter, Roxanne Conlin, Edward L. Dowd, David C. Iglesias, J. Alan Johnson, B. Todd Jones, Doug Jones, Leon Kellner, Matthew D. Orwig, James K. Robinson, Richard Rossman, Steve Sachs, Donald K. Stern, Atlee W. Wampler III, Edward G. Warin, Dan K. Webb, and Sheldon Whitehouse are citizens who have previously served their country as United States Attorneys. As shown in the table below, *amici* were appointed by, and served under, both Republican and Democratic Presidents, including Presidents Lyndon Johnson, Richard Nixon, Jimmy Carter, Ronald Reagan, George H. W. Bush, William Clinton, and George W. Bush. Collectively, they served approximately 88 years as U.S. Attorneys, in 16 different districts. Some of the *amici* have also served in other high-level positions in the U.S. Department of Justice and as prosecutors for state or local governments.

| Amicus | Dates of Service | District | Appointed By |
|---|---|---|---|
| George Beall | 1970-1975 | D. Md. | Nixon |
| Alan Bersin | 1993-1998 | S. D. Cal. | Clinton |
| William Braniff[1] | 1988-1993 | S. D. Cal. | Geo. H. W. Bush |
| Zach Carter | 1993-1999 | E. D. N. Y. | Clinton |
| Roxanne Conlin | 1977-1981 | S. D. Iowa | Carter |
| Edward L. Dowd | 1993-1999 | E. D. Mo. | Clinton |
| David C. Iglesias | 2001-2006 | D. N. M. | Geo. W. Bush |
| J. Alan Johnson | 1981-1989 | W. D. Pa. | Reagan |
| B. Todd Jones | 1998-2001 | D. Minn. | Clinton |

---

[1] Mr. Braniff was appointed by the Attorney General in 1988, during the Reagan administration, and by President Bush in 1989.

| | | | |
|---|---|---|---|
| Doug Jones | 1997-2001 | N. D. Ala. | Clinton |
| Leon Kellner | 1985-1988 | S. D. Fla. | Reagan |
| Matthew D. Orwig | 2002-2007 | E. D. Tex. | Geo. W. Bush |
| James K. Robinson[2] | 1977-1980 | E. D. Mich. | Carter |
| Richard Rossman[3] | 1980-1981 | E. D. Mich. | |
| Steve Sachs[4] | 1967-1970 | D. Md. | Johnson |
| Donald K. Stern | 1993-2001 | D. Mass. | Clinton |
| Atlee W. Wampler III | 1980-1982 | S. D. Fla. | Carter |
| Edward G. Warin | 1976-1980 | D. Neb. | Carter |
| Dan K. Webb | 1981-1985 | N. D. Ill. | Reagan |
| Sheldon Whitehouse | 1994-1998 | D. R. I. | Clinton |

Because of their experience, *amici* have a first-hand understanding of the importance – indeed, the absolute *necessity* – of non-partisan enforcement of the laws by U.S. Attorneys.  To function effectively, our criminal justice system requires the delegation of vast authority and broad discretion to prosecutors.  In return, our government has both a right and a duty to ensure that the awesome powers of the prosecutor are not used for partisan purposes.  Any attempt to misuse prosecutorial powers to serve partisan ends threatens the rule of law and undermines the foundations of our democracy.

---

[2] Mr. Robinson also served as Assistant Attorney General for the Criminal Division of the U.S. Department of Justice from 1998-2001, under President Clinton.

[3] Mr. Rossman was appointed by the court.

[4] Mr. Sachs was appointed by President Johnson; his service continued under President Nixon. Mr. Sachs also served as the Attorney General of Maryland from 1979-1986.

The overriding significance of that principle has important implications here. In this case, the Court must consider whether Congress may invoke the aid of the judicial branch to enforce its demands for testimony and documents from the executive branch. In considering that question, the court should weigh heavily the dangers posed by partisanship in the prosecutor's office. Congress conducts many investigations, involving matters great and small. *This* congressional inquiry involves the possible subversion of principles at the core of constitutional government. It is a matter of the utmost importance for Congress to conduct a complete investigation to determine whether White House officials have injected, or attempted to inject, partisan considerations into a process that must be rigorously insulated from such considerations.

Whatever the facts may be, it is not surprising that the investigation of such alleged wrongdoing has generated accusations of partisanship on both sides, or that the executive branch has resisted congressional demands for testimony and documents from White House officials. *Amici* have no partisan agenda and, as a general matter, do not advocate an enhancement of the powers of Congress or a reduction of the powers of the President. To the contrary, their shared objective is to emphasize the dangers of partisanship with respect to the matters that underlie this dispute, and the compelling *public* interest in protecting against those dangers. *Amici* are well situated to address these issues and to explain their important bearing on this case.

## ARGUMENT

This case arises from profoundly serious allegations: that officials in the White House and at the highest levels of the Department of Justice forced U. S. Attorneys to resign from office because those U.S. Attorneys honored their legal and ethical duty to ignore partisan political considerations when exercising

3

"one of the core powers of the Executive Branch of the Federal Government, the power to prosecute." *United States* v. *Armstrong,* 517 U.S. 456 , 467 (1996).

*Amici* express no view on whether the allegations are well-founded. That question is not before this Court. The nature of those allegations, however, is very relevant to questions that are before this Court. Partisan influence on prosecutorial decisions threatens to undermine the rule of law and erode support for democratic government. For that reason, the principle that partisan politics should *never* influence prosecutorial decisions must be vigilantly protected. In a system of separation of powers and checks and balances, it is critically important to protect the ability of Congress to investigate whether officials at the highest levels of the executive branch have attempted to inject partisan considerations into the exercise of prosecutorial powers.

It is possible that the defendants may properly invoke executive privilege to withhold some documents and information that would otherwise be called for by congressional subpoenas. But even if defendants ultimately can establish a basis for asserting executive privilege as to some matters – an issue that *amici* do not address – this Court should not accept their blanket assertion of immunity at this stage. Instead, the Court should rule that these defendants may not ignore duly authorized congressional subpoenas, either by categorically refusing to appear before Congress and answer questions, as Ms. Miers has done, or by categorically refusing to provide documents, as Mr. Bolten has done, merely by asserting a unilateral, unsupported, unreviewed, and unqualified claim of immunity.

4

I.      **There Is A Compelling Constitutional Interest In Ensuring That Prosecutors Exercise Their Powers Without Regard To Partisan Considerations**

In a government of laws, prosecutors hold a position of sacred trust. As then-Attorney General Robert H. Jackson explained in 1940:

> The prosecutor has more control over life, liberty, and reputation than any other person in America. His discretion is tremendous. He can have citizens investigated and, if he is that kind of person, he can have this done to the tune of public statements and veiled or unveiled intimations. Or the prosecutor may choose a more subtle course and simply have a citizen's friends interviewed. The prosecutor can order arrests, present cases to the grand jury in secret session, and on the basis of his one-sided presentation of the facts, can cause the citizen to be indicted and held for trial. He may dismiss the case before trial, in which case the defense never has a chance to be heard. Or he may go on with a public trial. If he obtains a conviction, the prosecutor can still make recommendations as to sentence, as to whether the prisoner should get probation or a suspended sentence, and after he is put away, as to whether he is a fit subject for parole. While the prosecutor at his best is one of the most beneficent forces in our society, when he acts from malice or other base motives, he is one of the worst.

Robert H. Jackson, *The Federal Prosecutor*, 31 J. CRIM. L. & CRIMINOLOGY 3, 3 (1940)), *available at* http://www.roberthjackson.org/Man/theman2-7-6-1 (speech delivered at the Second Annual Conference of United States Attorneys).

Because our legal system gives such great power and discretion to prosecutors, it also requires unwavering adherence to the fundamental precept that this power and discretion must *never* be abused to serve partisan political objectives. Violation of that principle threatens the rights and liberties of individual citizens who may be targeted by an unscrupulous prosecutor motivated by politics. The damage caused by such abuses, however, goes far beyond the individuals who are directly affected. Partisan prosecutions are a threat to the fundamental values that support our democracy and our Constitution.

5

Partisan prosecutions disturb the constitutional responsibilities and prerogatives of all three branches of government. The quintessential power that the Constitution grants to Congress – the power to legislate – becomes an empty power when prosecutors fail to enforce the laws in an even-handed manner. Such a failure also violates the most basic constitutional obligation of the president: to faithfully execute executive powers. It manifests a profound contempt of the judicial branch by fraudulently enlisting the power of the courts to serve illicit ends. Partisanship in the prosecutor's office erodes public confidence in the legitimacy of government (and especially the legitimacy of the criminal justice system administered by the courts), which is the very foundation of any democracy. When prosecutors abuse their powers in connection with the conduct of elections (one of the allegations at issue here), the abuse can destroy the defining characteristic of democracy. Democracy rests on the power of the sovereign people to "throw the rascals out." That power is thwarted if the rascals are able to manipulate the results of elections by partisan prosecutions (or non-prosecutions).

The Supreme Court properly has described impartial execution of the law as a "great end of Government." *United States Civil Serv. Comm'n* v. *Nat'l Ass'n of Letter Carriers*, 413 U.S 548, 565 (1973). It is "fundamental" that "employees in the Executive Branch of the Government, or those working for any of its agencies, should administer the law in accordance with the will of Congress, rather than in accordance with their own or the will of a political party. They are expected to enforce the law and execute the programs of the Government without bias or favoritism for or against any political party or group or the members thereof." *Id*. at 564.

This principle is stated unequivocally in the Justice Department's prescription of prosecutorial policies and practices: "In determining whether to commence or recommend prosecution or take other

6

action against a person, the attorney for the government should not be influenced by * * *[the person's] political associations, activities, or beliefs." *Principles of Federal Prosecution,* § 9-27.260, *available at* http://www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/27mcrm.htm#9-27.260. Such matters "plainly should not influence the determination whether to initiate or recommend prosecution or take other action." *Ibid.* A resolution adopted by the National Association of Former United States Attorneys in the wake of recent events reiterates the principle: "Decisions by United States Attorneys regarding bringing a case should be made without regard to political issues and should be made in an impartial manner. United States Attorneys should never be asked to conduct or not conduct an investigation or bring or not bring charges to assist any candidate or any party in an election." *Recognizing the Importance of the Position of the United States Attorney*, National Association of Former United States Attorneys (Nov. 10, 2007), *available at* http://lawprofessors.typepad.com/whitecollarcrime_blog/files/nafusa_resolution_nov_2007.pdf; see also *Principles for Assuring Legitimacy to the Crucial Decisions of the Department of Justice*, The Constitution Project at A.1, *available at* http://lawprofessors.typepad.com/whitecollarcrime_blog/files/constitution_project_principles_for_assuring_legitimacy_nov_2007.pdf ("Prosecutions should never be based on partisan considerations. Decisions to prosecute should be based solely on the facts and the law. Politics should play no part in determining either whether to bring the case or the timing for bringing the case."); Remarks Prepared for Delivery by Attorney General Michael B. Mukasey at the Commonwealth Club of San Francisco, *available at* http://www.usdoj.gov/ag/speeches/2008/ag_speech_080327.html (Justice Department investigations of public corruption must be conducted "utterly without regard to the political affiliation of a particular public official. After all, a corruption investigation that is motivated by partisan politics is just corruption by another name.").

In weighing conflicting claims of congressional and executive powers, the courts must consider the danger posed by partisan prosecutions – not merely to individual rights and liberties but, more importantly, to core democratic and constitutional values. When a grand jury subpoena is involved, presidential prerogatives must yield to accommodate the "fundamental" and "comprehensive" need for evidence to achieve the criminal justice system's "'twofold aim * * * that guilt shall not escape or innocence suffer.'" *United States* v. *Nixon*, 418 U.S. 706, 709 (1974) (quoting *Berger* v. *United States*, 295 U.S. 78, 88 (1935)). If presidential prerogatives must yield to a grand jury subpoena in order to serve that twofold aim in the *individual* case, it is all the more important for those prerogatives to yield to a congressional subpoena that is issued to determine whether there is a *systematic* threat to the same objectives.

Because of the seriousness of the underlying allegations, a *complete* congressional investigation is essential. A thorough investigation serves a critical purpose even if it ultimately demonstrates that misconduct has *not* occurred. Finding the absence of wrongdoing will help to preserve and restore public confidence in the integrity of federal prosecutions. "[I]t is not only important that the Government and its employees in fact avoid practicing political justice, but it is also critical that they appear to the public to be avoiding it, if confidence in the system of representative Government is not to be eroded to a disastrous extent." *Nat'l Ass'n of Letter Carriers*, 413 U.S at 565. The public cannot be expected to have that confidence if critical questions about alleged abuses are never answered. Indeed, a failure thoroughly to investigate allegations of partisan influence on prosecutions will greatly increase the risk that in the future, prosecutors will be subjected to, and may succumb to, improper political influence.

As former officials in the executive branch of government, *amici* are keenly aware of the importance of protecting the executive branch's legitimate constitutional prerogatives from encroachment

by other branches of government. But our constitutional system of separation of powers and checks and balances also demands that the legislative and judicial branches assert and protect their own constitutional authority. Especially in the context presented by this case, the assertion of congressional power serves a unique and critical need, because other institutions have limited ability to address the abuse of prosecutorial powers.

Needless to say, leaving such a matter entirely to the executive branch invites danger. The executive branch officials on whom society relies for protection against corruption – prosecutors – cannot reasonably be expected to expose their own misconduct or the misconduct of partisan allies whose interests they protect. If misconduct takes the form of forcing the resignation of a prosecutor who refuses to consider partisan interests, the former prosecutor likely will not know of the misconduct and will have no power to investigate it. *See* John McKay, *Train Wreck at the Justice Department:  An Eyewitness Account*, 31 SEATTLE U. L. REV. 265 (2008).

Likewise, the press has limited ability to uncover partisanship in the prosecutor's office or efforts (whether successful or not) to inject partisanship into prosecutorial decisions. For compelling reasons, the secrecy of large portions of the prosecutorial process (including, most notably, grand jury proceedings) is required by law; in any case, information about partisan influence on prosecutions is likely to be closely held by a few individuals with strong motivations to maintain secrecy. In this case, despite extraordinary national attention, the press has been completely unable to obtain the information about White House communications that Congress is seeking. Lacking any ability to compel the production of information, the press can do nothing more than generate (but not refute) suspicions of improper partisan motivations.

Federal courts also have inherently limited capabilities to prevent these abuses. Courts are nearly powerless to provide redress if a prosecutor refuses to investigate or prosecute wrongdoing by political allies or if a prosecutor subjects political opponents to investigation for partisan purposes, but does not bring charges. A court can act only when a case is before it, and the result of prosecutorial abuse of this kind is that a case is *not* presented for judicial resolution. Even if a case is presented to a court, in instances of partisan prosecutions of political opponents, the judicial system's ability to detect and prevent partisan abuse is extremely limited. One can hope (but have no assurance) that the judicial system will prevent the injustice of a conviction on unfounded charges. Even so, the defendant (and the defendant's political allies) will often be severely harmed by a politically driven prosecution, regardless of its outcome. Courts and judges are ill-equipped to prevent, detect, or provide remedies for such abuses. The judicial branch, and the rules under which it operates, properly focuses on deciding whether a defendant has committed a crime, not on the prosecutor's motive for charging a crime. Aside from the (limited) power to prevent unjust convictions, courts have few if any means to undo the harmful effects of a baseless prosecution.[5]

It is precisely because prosecutors are given such broad power and discretion, and because there are so few checks against the prosecutor's abuse of his position, that unscrupulous officials may be sorely tempted to hijack prosecutorial offices for improper political purposes. This danger makes it all the more

---

[5] To be sure, the targets of criminal prosecutions could challenge criminal charges brought for partisan purposes, but this hardly provides a substantial institutional protection. A criminal defendant must meet a "rigorous" standard before being entitled even to discovery into a claim of selective prosecution, *Armstrong,* 517 U.S. at 468, and then must show that other persons who had committed similar criminal acts were not prosecuted in circumstances suggesting that the different results arose from partisan considerations – which is a formidable burden to carry, *id.* at 465 (defendant must present "clear evidence" to rebut presumption of prosecutorial adherence to equal protection). Furthermore, no criminal defendant could challenge the prosecutor's partisan decision to *decline* to bring a case.

important to preserve the ability of Congress to guard against these abuses. If permitted to enforce its subpoenas for documents and testimony, Congress has a unique ability to address improper partisan influence in the prosecutorial process. No other institution will fill the vacuum if Congress is unable to investigate and respond to this evil.

## II.    The Relief Requested By Plaintiff's Motion For Partial Summary Judgment Will Provide Essential Facts That Are Needed To Evaluate Claims Of Executive Privilege

The plaintiff's motion for partial summary judgment requests limited relief. Among other things, it requests a judgment that Ms. Miers must appear before Congress as the subpoena requires; that she must testify as to non-privileged matters; that she must assert privilege only in response to specific questions; and that Mr. Bolten must provide support for his claims that documents are privileged, in the form of a privilege log. In response, defendants assert a nearly unlimited and completely unreviewable privilege to withhold documents and testimony from Congress. Among other things, they assert that they need not even appear before Congress to claim executive privilege; that they may properly assert a blanket claim of privilege in the abstract, rather than claiming privilege in response to specific questions; and that they need not even provide the basic information required in a privilege log to support their privilege claims.

These are extraordinary assertions. *Amici* recognize that many communications involving a President's advisers – including, perhaps, some of the communications that are the subject of the congressional subpoenas in this case – are protected by executive privilege. That possibility, however, does not justify defendants' claims. Our constitutional system of government is predicated on the notion that no person is above the law, and that the powers of each branch of government must be subject to checks and balances by other branches. The defendants' arguments, if accepted, would mean that the

11

Executive's assertion of privilege, no matter how broad and no matter how unfounded, will be unreviewable by Congress and the courts.

If there is to be *any* limit on the Executive's ability unilaterally to withhold documents and testimony in this context, the remedies requested in the plaintiff's motion for partial summary judgment are essential. Certainly the privilege claims put forth to date by the defendants would not be taken at face value and credited in any other context. Those claims are too broad and unsupported. There is no reason to think that *every* question Congress might ask would seek information protected by executive privilege. Nor is there is reason to think that *every* answer or document that the defendants might provide would satisfy the threshold requirements for executive privilege. Moreover, executive privilege is a qualified privilege; even if the threshold requirements for a privilege claim are satisfied, "courts must balance the public interests at stake in determining whether the privilege should yield in a particular case, and must specifically consider the need of the party seeking privileged evidence." *In re Sealed Case*, 121 F.3d 729, 746 (D.C. Cir. 1997).

When acting as prosecutors or civil litigants for the United States in various U.S. Attorneys' offices, *amici* would never have acquiesced to such broad and unsupported claims of privilege by an opposing party.[6] Such acquiescence would invite abuse and severely undermine the search for the truth. Those considerations apply when privilege is claimed in response to *any* subpoena, not only subpoenas that are

---

[6] Similarly, *amici* would never have acquiesced in the notion, advanced by defendants here, that the views of a subpoena recipient, rather than the judgment of the investigator, should govern the permissible scope of an investigation or the number, identity, or sequence of witnesses who may be questioned. That notion, without question, would compromise the ability to conduct a meaningful investigation.

issued by prosecutors or private litigants. In analogous circumstances, it is clearly established that "Congress has 'the right to compel the attendance of witnesses and their answers to proper questions, in the same manner and by the use of the same means, that courts of justice can in like cases.'" *Nixon* v. *Sirica*, 487 F.2d 700, 738 (D.C. Cir. 1973) (quoting *Kilbourn* v. *Thompson,* 103 U.S. 168, 190 (1880)). In other contexts,

> [i]t is well settled that a witness whose testimony is subpoenaed cannot simply refuse to appear altogether on grounds of privilege, but rather must appear, testify, and invoke the privilege in response to particular questions. Otherwise, a court would be forced to attempt to determine the existence, application, and scope of an asserted privilege in ignorance of the context in which it is alleged to apply.

*Matter of Certain Complaints Under Investigation by an Investigating Comm. of the Judicial Council of the Eleventh Circuit* v. *Mercer*, 783 F.2d 1488, 1518 (11th Cir. 1986) (superseded by statute in other respects) (citing *In re Possible Violations of 18 U.S.C. §§ 371, 641, 1503*, 564 F.2d 567, 571 (D.C. Cir. 1977)).

Even when dealing with Fifth Amendment claims, courts do not accept such blanket claims of privilege. "In unusual cases * * * a district judge may sustain a blanket assertion of privilege after determining that there is a reasonable basis for believing a danger to the witness might exist in answering *any* relevant question." *United States* v. *Thornton*, 733 F.2d 121, 126 (D.C. Cir. 1984); see also *United States* v. *Reese*, 561 F.2d 894, 900-01 (D.C. Cir. 1977) (sustaining a blanket privilege claim because the only relevant matters about which the witness might have been questioned concerned incriminating information that, under the Fifth Amendment, he could not be required to disclose). Here, there has been no demonstration that *any* relevant question that could be asked by Congress would require information protected by privilege. And there is even more reason to reject blanket claims of executive privilege than

13

there is to reject blanket claims of Fifth Amendment privilege because, unlike the Fifth Amendment privilege, executive privilege may "yield in a particular case" in light of the "need of the party seeking privileged evidence." *In re Sealed Case*, 121 F.3d at 746.

Similarly, Congress's request for a privilege log is both reasonable and necessary if there is to be any limit on defendants' ability to assert executive privilege. "When information subject to a subpoena is withheld on a claim that it is privileged * * * the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim." *Avery Dennison Corp.* v. *Four Pillars*, 190 F.R.D. 1, *1 (D.D.C. 1999). The D.C. Circuit has recognized that it is "incumbent upon the President to make *particularized* showings in justification of his claims of privilege." *Senate Select Comm. on Presidential Campaign Activities* v. *Nixon*, 498 F.2d 725, 730 (D.C. Cir. 1974) (emphasis added). Especially when dealing with qualified privileges such as executive privilege, the "need for the information cannot be balanced against its sensitive and critical role in the government's decision making process without any indication of what that information is." *Northrop Corp.* v. *McDonnell Douglas Corp.*, 751 F.2d 395, 405 (D.C. Cir. 1984). The privilege log "has become, by now, the universally accepted means of asserting privileges in discovery in the federal courts." *Four Pillars*, 190 F.R.D. at *1. A privilege log permits the identification of privilege claims that appear to be unfounded on their face and serves as a useful deterrent to overly broad claims of privilege. It also serves to reduce the scope of privilege disputes and "the need for in camera examination of the documents." FED. R. CIV. P. 26(b)(5) Advisory Committee Note to 1993 Amendments. If defendants' privilege claims are to be subject to review, a privilege log will aid that process in ways that benefit all parties.

14

The relief that is requested in plaintiff's motion for partial summary judgment is modest and would not require any determination of which communications are or are not protected by executive privilege. The relief would, however, provide essential facts that are needed to reach an informed judgment whether executive privilege may properly be invoked as to specific communications.

*     *     *     *

U.S. Attorneys, and the Department of Justice in which they serve, have maintained a long and proud tradition of faithfully executing the law, evenhandedly and without fear or favor. In part because of that tradition, the principle that U.S. Attorneys should not be swayed by partisan politics is so deeply ingrained that it easily can be taken for granted. It must not be. That principle is a bedrock of constitutional government, without which we cannot maintain the democratic rule of law. Any departure from that principle, real or suspected, must be thoroughly investigated; if the investigation reveals abuses, appropriate preventive and corrective action should rank among the nation's highest priorities. Congress should and must play a central role in protecting against this threat. Its power to do so must be preserved.

## CONCLUSION

Plaintiff's motion for partial summary judgment should be granted.


Respectfully submitted,


 /s/ Alan D. Strasser
Lawrence S. Robbins, D.C. Bar # 420260
Donald J. Russell, D.C. Bar # 474445
Alan D. Strasser, D.C. Bar # 967885
Brian A. Pérez-Daple, D.C. Bar # 979681

ROBBINS, RUSSELL, ENGLERT, ORSECK,
UNTEREINER & SAUBER LLP
1801 K Street, N.W., Suite 411L
Washington, D.C. 20006
(202) 775-4500

Counsel for Former United States Attorneys

Dated: May 29, 2008

16