IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMITTEE ON THE JUDICIARY, UNITED STATES HOUSE OF REPRESENTATIVES, | ) ) ) ) |
| *Plaintiff*, | ) ) ) |
| v. | ) ) |
| HARRIET MIERS, *et al.* | ) ) ) ) |
| *Defendants*. | ) ) |

Case No. 1:08-cv-00409 (JDB)

**COMMITTEE ON THE JUDICIARY'S OPPOSITION TO DEFENDANTS'
EMERGENCY MOTION FOR STAY PENDING APPEAL**

Plaintiff Committee on the Judiciary of the U.S. House of Representatives ("Committee") opposes Defendants' motion for a stay pending appeal on the following grounds: (1) Ms. Miers's claim of absolute immunity has no likelihood of success on appeal because it is baseless and contrary to Supreme Court precedent, and was thoroughly and irrefutably rejected by the Court; (2) the Court's non-final order of July 31, 2008 ("Order") is not appealable, and thus a stay needlessly would cause further harmful delay; (3) Defendants suffer no harm, let alone *irreparable* harm, from (a) appearing at a congressional hearing or (b) producing non-privileged documents and descriptions of the documents they seek to withhold on the basis of executive privilege; (4) the Committee will suffer considerable harm as a result of the Executive Branch's delaying tactics, which virtually assure that the Committee's investigation into the forced resignations in mid-Administration of nine United States Attorneys in 2006 ("Investigation") will not be completed until after the 110th Congress has concluded and the current Administration has left office in January 2009; and (5) a stay would undermine the public

interest by hindering the Congress from developing, if necessary, any relevant legislative remedies designed to improve the effective and fair functioning of the Nation's criminal justice system.

The motion of the Department of Justice ("Department") is simply the latest effort by the Administration to frustrate the Committee's Investigation until the President leaves office: Ms. Miers and Mr. Bolten first refused to appear and/or produce documents to the Committee voluntarily; they subsequently refused to comply with valid Committee subpoenas compelling them to appear and/or produce documents; the White House steadfastly refused to negotiate a compromise with the Committee; the Attorney General ordered the United States Attorney ("U.S. Attorney") for the District of Columbia not to bring the matter of Defendants' contempt of Congress before a grand jury as required by 2 U.S.C. §§ 192 and 194; and even after receiving the Court's comprehensive and persuasive rejection of its legal positions, the Department has filed an appeal to persist in its clearly unfounded claims of absolute immunity and unsupportable challenges to Congress's ability to bring suit to enforce its subpoenas. The Court should not condone such stonewalling.

The Administration's approach stands in stark contrast to the Committee's desire to seek accommodation. After the Court rejected the Department's immunity claims, the Committee did not, as the Department claims, "demand[] from defendants immediate compliance with the Committee's subpoenas." Defs.' Stay Mot. at 2. Rather, the Committee Chairman followed the Court's suggestion that the parties "resume their discourse and negotiations in an effort to resolve their differences constructively," Mem. Op. at 4, and wrote to Ms. Miers's counsel to express that he was "hopeful that we can move forward and work together towards a fair and efficient resolution of this matter" on "a cooperative basis." Defs.' Stay Mot. Exh. 2; *see also id.*

2

Exh. 1 (indicating to White House Counsel that the Committee is "ready, willing, and able to work with you cooperatively to resolve these issues, . . . and would welcome a meeting with you directly at your earliest convenience to resolve the matter"). Moreover, as the Chairman indicated in his correspondence (Defs.' Stay Mot. Exh. 2), he does not anticipate Ms. Miers's appearance until next month, and thus there is ample time to explore and hopefully achieve such a resolution or, failing that, for Defendants to seek a stay in the Court of Appeals. And although discussions between the parties have begun – at the Committee's initiative – it is clear that if the Court grants a stay, the White House would have little or no incentive to compromise. Thus, to provide any reasonable chance that the negotiations may succeed, the motion for a stay should be denied.

## ARGUMENT

In determining whether to grant a motion to stay pending appeal, a court must consider whether the movant has shown: "(1) that it has a substantial likelihood of success on the merits; (2) that it will suffer irreparable injury if the stay is denied; (3) that issuance of the stay will not cause substantial harm to other parties; and (4) that the public interest will be served by issuance of the stay." *United States v. Philip Morris, Inc.*, 314 F.3d 612, 617 (D.C. Cir. 2003); *see also Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958). Whether to grant or deny a stay depends on a "balance of equities," *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977) ("*WMATC*"), and Defendants, as the moving parties, carry the burden of demonstrating that the balance clearly tilts in their favor, *see Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 978 (D.C. Cir. 1985) (noting that it is "the movant's obligation to justify

the court's exercise of such an extraordinary remedy"). In this case, the balance of equities overwhelmingly favors denying Defendants' motion.

I.      **Defendants Do Not Have a Substantial Likelihood of Success on the Merits.**

   A.   **The Law Is Unequivocal that Executive Officials Are Not Absolutely Immune from Congressional Process.**

The Department subtly but materially misrepresents the appropriate standard used to determine whether or not a party can demonstrate a "substantial likelihood of success on the merits." According to the Department, a moving party has met its burden when a "case, at a minimum, presents questions so 'serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.'" Defs.' Stay Mot. at 3 (quoting *WMATC*, 559 F.2d at 844). On this basis, the Department contends that because the case presents "'issues of extraordinary constitutional significance,'" *id.* at 5 (quoting Mem. Op. at 1), Defendants have a substantial likelihood of success on the merits.

The Department's formulation is misleading and wrong because it suggests that so long as the issues presented are *important – e.g.*, they have a purported constitutional dimension – the moving party has a substantial likelihood of success on the merits. This mischaracterization is the result of the Department's incomplete excerpting of *WMATC*. The full passage states that a stay pending appeal may be appropriate when a "'plaintiff has *raised questions going to the merits* so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.'" *WMATC*, 559 F.2d at 844 (citation omitted) (emphasis added). The D.C. Circuit has further elaborated that a party has "raised questions going to the merits" where "ultimate success by the movant is a mathematical probability." *Id.* at 843. Thus, the inquiry is not whether the subject matter of the movant's claim is meaningful or

4

important, but rather, whether the merits present close and difficult questions of law that will probably be resolved in the movant's favor.[1]

In this case, the claim of absolute immunity for presidential advisers, current or former, has no likelihood of success because it is a baseless claim that has been expressly repudiated by the Supreme Court and this Circuit. *See United States v. Nixon*, 418 U.S. 683, 705-06 (1974); *Harlow v. Fitzgerald*, 457 U.S. 800, 811 (1982); *Senate Select Comm. on Presidential Campaign Activities v. Nixon*, 498 F.2d 725, 729-30 (D.C. Cir. 1974). As the Court explained:

> The Executive cannot identify a single judicial opinion that recognizes absolute immunity for senior presidential advisors in this or any other context. That simple yet critical fact bears repeating: the asserted absolute immunity claim here is entirely unsupported by existing case law. In fact, there is Supreme Court authority that is all but conclusive on this question and that powerfully suggests that such advisors do not enjoy absolute immunity.

Mem. Op. at 78. The Court added that "the aspect of this lawsuit that is unprecedented is the notion that Ms. Miers is absolutely immune from compelled congressional process. . . . The Executive's current claim of absolute immunity from compelled congressional process for senior presidential aides is without any support in the case law." *Id.* at 3; *see also id.* at 83.

The Department's motion implicitly recognizes the validity of the Court's determination by failing to provide *a single* reason why it has a "mathematical probability of success" on appeal. Not one. Its lone statement on the matter is that "the Court's rejection of defendants'

---

[1] The standard for demonstrating a substantial likelihood of success is more stringent when evaluating a motion for a stay pending appeal than a motion for a preliminary injunction. As the Seventh Circuit has stated, "in the context of a stay pending appeal, where the applicant's arguments have already been evaluated on the success scale [by the district court], the applicant must make a stronger threshold showing of likelihood of success to meet his burden." *Matter of Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1301 (7th Cir. 1997); *see also Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991) (noting that "a movant seeking a stay pending review on the merits of a district court's judgment will have greater difficulty in demonstrating a likelihood of success on the merits" than in the preliminary injunction context).

5

claim that senior Presidential advisers are absolutely immune from testimonial compulsion before Congress . . . warrants appellate consideration before the Court's Order is given effect." Defs.' Stay Mot. at 7. This bald assertion is clearly insufficient to establish *any* likelihood of success on the merits.[2]

Rather than offering any arguments as to why Defendants have a likelihood of success *on the merits*, the Department dedicates nearly its entire argument to maintaining that Defendants present "serious" questions regarding the Committee's standing and its right of action to bring this suit. *See, e.g.*, Defs.' Stay Mot. at 6. As the Department well understands, however, these claims are not appealable at this stage of the litigation,[3] and thus an appeal on these bases – let alone a stay pending appeal – is inappropriate.[4] *See, e.g.*, *Doe v. Exxon Mobil Corp.*, 473 F.3d 345, 350-51 (D.C. Cir. 2007) (denying collateral appeal of political question claim); *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1133 (D.C. Cir. 2004) (asserting that the "[d]enial of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is not

---

[2] Defendants also make no attempt to argue that they have a likelihood of success on the merits of their claim that they should not be required to produce all non-privileged documents or descriptions of documents withheld on the basis of executive privilege, a case management issue that would be reviewed on appeal, if at all, and only for abuse of discretion. *See, e.g.*, *Food Lion, Inc. v. United Food and Commercial Workers Int'l Union, AFL-CIO-CLC*, 103 F.3d 1007, 1012 (D.C. Cir. 1997). Defendants conceded at oral argument that they have no claim of absolute immunity from the production of documents. *See* Mem. Op. at 79 n.34 (quoting Tr. at 101). Thus, there is absolutely no basis for refusing to produce non-privileged documents and detailed descriptions of documents withheld, as well as no conceivable basis for an appeal of that portion of the Court's Order.

[3] Even if they were considered on appeal, it is clear that the Committee has standing under *United States v. AT&T*, 551 F.2d 384 (1976), *see* Mem. Op. at 25 (noting that "the Executive overlooks the [*AT&T*] court's express conclusion that . . . the House has standing to invoke the federal judicial power to aid its investigation function"), and that the plain language and case law interpreting the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, *see* Mem. Op. at 48-49, 53, and the Constitution itself, *see id.* at 68-69, provide the Committee with a cause of action to bring suit to enforce its subpoenas.

[4] Likewise, "'pendent' appeals that substantially predominate over the independently appealable order" are disfavored, and "parties should not be encouraged to bring insignificant, but final, matters before th[e] court as mere vehicles for pendent review of numerous or complex orders that are not independently appealable." *Gilda Marx, Inc. v. Wildwood Exercise, Inc.*, 85 F.3d 675, 679 (D.C. Cir. 1996) (internal citation omitted).

ordinarily subject to interlocutory appeal"); *see also Summit Medical Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1334 (11th Cir. 1999) (asserting that "a district court's denial of a motion to dismiss on justiciability grounds is *not* immediately appealable under the collateral order doctrine").

### B. The Court's Order Is Not Appealable and Thus a Stay Would Be Inappropriate.

Defendants also cannot establish a substantial likelihood of success on the merits because the Court of Appeals does not have jurisdiction to entertain their appeal. *See United States v. Fiumara*, 605 F.2d 116, 117 (3d Cir. 1979) (asserting that courts "must weigh not only the likelihood of success on the merits but also whether the defendant will be able to satisfy the threshold requirements of jurisdiction"). The Court's preliminary order denying Defendants' motion to dismiss and declaring Ms. Miers's obligation to appear to answer questions that do not call for arguably privileged information and to assert, where appropriate in response to specific questions, executive privilege, is not an appealable order.

The Court's Order, of course, is not a "final order" under 28 U.S.C. § 1291. *See Exxon Mobil Corp.*, 473 F.3d at 348 ("In general, a 'final decision' is a district court order that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)). It also does not qualify as an "injunction" for purposes of 28 U.S.C. § 1292(a)(1),[5] because the Court simply "*[d]eclared* that Harriet Miers is not immune from compelled congressional process," Mem. Op. at 1 (emphasis added).[6] *See Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 742, 744-45 (1976) (stating that a

---

[5] Section 1292(a)(1) states that "the courts of appeals shall have jurisdiction of appeals from [i]nterlocutory orders of the district courts . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions."

[6] The Court apparently believed that the Administration, whose constitutional responsibility it is to take care that the laws are enforced and obeyed, and Ms. Miers, a member of this Bar and thus an officer of this Court, would comply with the law, as declared by the Court, without a further order at this time.

declaration that does not end the litigation does not qualify as an injunction).  And it is well established that an order to produce a privilege log (and any non-privileged documents) is not an "injunction" for purposes of § 1292(a)(1).  *See Citizens for Responsibility and Ethics in Wash. v. U.S. Dep't of Homeland Sec.*, No. 07-5406, 2008 WL 2697244, at *2 (D.C. Cir. July 11, 2008).

The Court's declaration also does not satisfy the collateral order doctrine.  *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949) (setting forth three-prong test).  Among other things,[7] the issue of absolute immunity effectively will be reviewable on appeal from a final judgment after the Court determines whether Committee's need for the assertedly privileged information outweighs the claims of confidentiality by the Administration.  *See Exxon Mobil Corp.*, 473 F.3d at 352-53.  Moreover, any immunity claim must be "substantial" to warrant interlocutory appeal under the collateral order doctrine, *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985) (requiring "substantial claim[s] of absolute immunity"); *KiSKA Constr. Corp.-U.S.A. v. WMATC*, 167 F.3d 608, 611 (D.C. Cir. 1999) (accepting jurisdiction over immunity claims that were not "plainly unsubstantial"), and Ms. Miers's assertion of absolute immunity is patently without merit.

## II.     Defendants Cannot Demonstrate that They Will Suffer Irreparable Harm.

The Department also does not – and cannot – point to *any* aspect of the Court's Order that would cause Ms. Miers or Mr. Bolten irreparable harm.  As they are the only defendants in this action, "irreparable harm" *to them* is the only harm that matters.  All of the alleged harms the Department identified in its previous memoranda, however, involve concerns about *future and aggregate* harms to the Executive Branch, and not any particular harm that would be sustained

---

[7] It is doubtful that the Court's Order "resolve[s] an important issue completely separate from the merits of the action," *Will v. Hallock*, 546 U.S. 345, 349 (2006), because the issue of the scope of executive privilege – here couched as "absolute executive immunity" – *is* "*the merits*" of this case.

8

by these actual defendants. For example, the Department expressed its concern "that an adversarial Congress might choose to exercise a power to compel the testimony of the President's immediate advisers regarding such matters on more than 'infrequent occasions,' thereby imposing great burdens on the President's Office." Defs.' Opp. at 61. The Department also claimed:

> Absent immunity from such testimony, Congress could invade the President's autonomy and confidentiality by seeking to examine the President's advisers on *any given subject* in order possibly to gain insight on the President's thinking or decisionmaking and possible future course of conduct. Congress could also attempt to influence the President's decisionmaking by inquiries into certain subject areas or by exposing, through the questions posed, matters that are sensitive and ongoing.

*Id.* at 52 (emphasis added). These concerns have little or nothing to do with any alleged harm that could arise from Ms. Miers's appearance specifically, and thus appellate review at the conclusion of the litigation – or at least review that would resolve the interlocutory matter in due course (*i.e.*, without a stay) – is more than adequate to prevent the type of long-range harm asserted by Defendants.

Ms. Miers will suffer no harm, let alone irreparable harm, by simply appearing at a congressional hearing pursuant to a congressional subpoena, answering questions that do not call for privileged information, and asserting privilege where appropriate to questions purportedly seeking privileged information. This is the obligation of all citizens, *see Watkins v. United States*, 354 U.S. 178, 187 (1957), and no court has ever suggested that this requirement may be excused because it is harmful, let alone irreparably harmful. The only "harm" that Ms. Miers could possibly suffer is the time and expense of appearing before the Committee. This inconvenience plainly is not enough to warrant a stay. *See McSurely v. McClellan*, 697 F.2d 309, 317 n.13 (D.C. Cir. 1982) ("'[M]ere injury, however substantial, in terms of money, time

9

and energy necessarily expended in the absence of a stay, are not enough' to satisfy the requirement of irreparable injury." (quoting *Va. Petroleum Jobbers*, 259 F.2d at 925)).

Likewise, the Department's claims of harm with respect to the production of detailed lists and descriptions of documents withheld concern only broad concepts of separation of powers and worries over additional future harms that could occur. The Department asserted:

> If Congress had a right to such logs, Congress could seek to require the White House and Executive Branch agencies to identify and catalog privileged and potentially sensitive communications of the President and his advisers in response to *any request* for documents that might be made by any legislative committee on *any given subject*.

Defs.' Opp. at 62-63 (emphases added). Similarly, the Department also maintained that

> owing to the high visibility of the Office of the President, it is an easily identifiable target for demands for information by Congress, with what would be a consequent demand for detailed privilege logs identifying sensitive communications and activities *on a vast range of subjects*. If the Committee were to prevail on this claim, there would be no effective check on Congress's ability to demand an accounting of the President's communications.

*Id.* at 69 (emphasis added). Clearly, what the Department has in mind is not *this particular* provision of document descriptions, but rather, the potential for *future* requirements to provide such descriptions to cause harm in the aggregate to the Executive Branch. Thus, there is no salient argument for irreparable harm with respect to the production of descriptions of documents withheld *in this instance alone*, and an appeal decided without a stay – or even a unified appeal taken at the conclusion of the litigation – could more than amply correct any purported error by this Court.

The Department also asserts (Defs.' Stay Mem. at 7-8) that the Court should grant a stay because Defendants' alleged harm is analogous to that sustained by other defendants whose claims of absolute or qualified immunity from judicial process have been denied. Those cases,

however, are inapposite for at least three reasons. *First*, in traditional immunity cases, which are for *money damages*, courts have voiced particular concern over subjecting potentially immune individuals to the heavy burdens associated with defending civil suits. *See Helstoski v. Meanor*, 442 U.S. 500, 507-08 (1979) (interlocutory appeal permitted in Speech or Debate context because "the Speech or Debate Clause was designed to protect Congressmen 'not only from the consequences of litigation's results but also from the burden of defending themselves'" (quoting *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967)); *Mitchell*, 472 U.S. at 525 (stating that "the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action"). Similarly, in the context of immunity from double jeopardy, interlocutory review is permitted so that the defendant "will not be forced . . . to endure the personal strain, public embarrassment, and expense of a criminal trial more than once for the same offense." *Abney v. United States*, 431 U.S. 651, 661 (1977). No such concerns are alleged (or are present) in this case, where all that is required of Ms. Miers is a single appearance at a congressional hearing.

*Second*, all of the cases the Department cites involve all-or-nothing claims of immunity, which is not the case here. In those cases, the party claiming immunity will suffer irreparable harm because if she is forced to stand trial, she no longer has *any* protection as a consequence of her official position. In the case of Ms. Miers, however, she is not irreparably injured because, even though she is obligated to appear before the Committee, she still may, as both the Committee and the Court have acknowledged, *see, e.g.*, Mem. Op. at 83, 89, assert executive privilege where appropriate. Thus, at this stage nothing will be revealed over which the President has instructed Ms. Miers to claim executive privilege.

11

*Third*, the Executive Branch's past practice belies any claim of irreparable injury. As the Committee noted and the Court acknowledged (and the Department has not denied), high-ranking presidential advisers – even current ones – have routinely appeared before Congress pursuant to congressional subpoenas. *See* Mem. Op. at 83. (citing Auerbach Decl. ¶¶ 2-3). Thus, it is unclear what "irreparable" harm is caused as a result of Ms. Miers appearing before the Committee. The Department at no point has alleged a concern with *Ms. Miers's* appearance on the basis of information she, in particular, may divulge in a hearing before the Committee. Obviously, the precedent of one more (former) high-ranking White House aide appearing before the Committee will not preclude any future presidential administration from asserting immunity in the unlikely event the Court of Appeals reverses this Court's decision on the merits.[8]

With respect to the documents at issue, no viable claim can be made that Defendants will suffer irreparable injury by producing nonprivileged materials.[9] Likewise, it is difficult to imagine any harm from producing a description of the documents withheld. The Department's attempt to use *John Doe Agency v. John Doe Corp.*, 488 U.S. 1306, 1308 (1989), to support its position is unavailing.[10] In *John Doe Agency*, the Supreme Court granted a stay from the

---

[8] Defendants' claim (Defs.' Stay Mot. at 2) that a stay is necessary because "other members of the Legislative Branch are seeking to have other close Presidential advisers comply with other Congressional subpoenas for documents and testimony," is curious. Three of the four House of Representatives matters cited (Defs.' Stay Mot. Exhs. 5, 6 & 7) concern subpoenas to the Administrators of the Environmental Protection Agency and the Office of Information and Regulatory Affairs, and the Attorney General, who by the Department's own definition are not "close Presidential advisers." *See* Mem. Op. at 79 (noting that the Department "insists that [absolute immunity] applies only to 'a very small cadre of senior advisers'" (citing Tr. at 96)).

[9] The Department erroneously claims (Defs. Stay Mot. at 9) that "[i]n the motion before the Court, . . . the Committee did not seek to have the Court compel production of any documents." In the Committee's motion for partial summary judgment, however, the Committee specifically asked the Court to "enjoin the Defendants forthwith to produce to the Committee all nonprivileged documents responsive to the subpoenas." Pl.'s Mot. for Partial Summ. Judgment at 2.

[10] The Department also cites *Ctr. for Int'l Envtl. Law v. Office of U.S. Trade Representative*, 240 F. Supp. 2d 21 (D.D.C. 2003), which is irrelevant. In *Center*, at issue was the "release [of] certain previously

disclosure of a *Vaughn* index because "[t]he District Court, having undertaken an *in camera* review of the *Vaughn* index and other documents, specifically found that disclosure of the *Vaughn* index and the documents posed a substantial risk of *jeopardizing an important ongoing grand jury investigation*." *Id.* at 1308 (emphasis added). It also asserted that "disclosure can reasonably be expected to interfere with an ongoing law enforcement investigation by apprising the targets of that investigation of the nature of the grand jury's inquiry and by facilitating hindrance of the investigation." *Id.* at 1308-09. No such collateral concern is present in the instant matter.

Under any theory, Defendants cannot demonstrate that the "challenged ruling might be of 'serious, perhaps irreparable, consequence'" to them. *Banks v. Office of Senate Sergeant-At-Arms & Doorkeeper of U.S. Senate*, 471 F.3d 1341, 1345 (D.C. Cir. 2006) (quoting *Cobell v. Kempthorne*, 455 F.3d 317, 321 (D.C. Cir. 2006)). Thus, the balance of the irreparable injury prong weighs heavily in favor of denying the requested stay.

## III. The Committee Will Continue to Suffer Substantial Harm As a Result of Defendants' Refusal to Comply with Their Subpoenas.

Despite the Department's contention (Defs.' Stay Mot. at 11) that "granting a stay would if anything facilitate, rather than impede, inter-branch efforts to seek a meaningful accommodation," the reality is that a stay would instead reinforce the status quo, which deprives the Committee of information necessary to complete its Investigation, and strengthen the resolve of the Administration to stonewall the Committee. The Administration is well aware that the clock is ticking on its tenure, and that a stay would likely permit it to run out the clock on this

---

withheld documents relating to the recently concluded negotiations of a proposed United States-Chile Free Trade Agreement," not the production of a list detailing the documents withheld. *See id.* at 21-22.

Congress. That outcome would be extremely damaging to the Committee, as it seeks closure to this important Investigation prior to the end of the current Congress and Administration.

Further delay is completely unwarranted. As the Court is aware, this Investigation began shortly after the start of the 110th Congress, in February 2007. Compl. ¶ 1. The first hearing in this Investigation took place on March 6, 2007, and the Committee's initial request to White House Counsel seeking the communications at issue occurred three days later. By the conclusion of the attempted negotiations, as "Mr. Fielding himself stated[,] the Committee had written to him 'on eight previous occasions, three of which letters contain or incorporate specific proposals involving terms for a possible agreement.'" Mem. Op. at 74. The Committee has demonstrated its commitment to obtaining the information and its belief that compliance with its subpoenas is essential for it to have the full picture of exactly what may have gone wrong with the administration of our Nation's criminal justice system.

The Department's claim (Defs.' Stay Mot. at 10) that any harm to the Committee caused by further delay will be "mitigated by the fact that the [Department] intend[s] to seek expedited appellate review" is specious.[11] At the outset, the Department's expedited proposal only shaves 10 total days off the 84-day briefing schedule. At best, appellate briefing would be concluded by November 2008, leaving the Court of Appeals far less time than is usually necessary if it intends hold oral argument by the end of its December calendar. *See* D.C. Circuit Handbook of Practice and Internal Procedures 36 (as amended 2007) (noting that "the final brief [is] usually due at least 50 days before the case is to be heard"). That schedule, as the Department well knows,

---

[11] Even if taken at face value, the Department's new push for expedited treatment contravenes its approach from the outset of the litigation, when it opposed the Committee's attempt to expedite consideration of this matter. *See* Defs.' Proposed Briefing Schedule (Mar. 19, 2008).

14

likely yields a decision at the earliest in January 2009, or *after* this Congress has expired. *See* U.S. Const., amend. XX, § 1 (noting that Congress ends on January 3 at noon).

Finally, the Committee stands to suffer much greater harm if this Court grants a stay than any purported harm Defendants might suffer if it does not. If a stay is granted and the Court of Appeals, as expected, affirms this Court's ruling, then precious time will be lost and a new Congress will have to pursue these important issues with a new Administration in the White House – *two years* after the Investigation was commenced. On the other hand, if a stay is denied and the Court of Appeals subsequently reverses the decision of this Court, then at worst, Ms. Miers will have appeared before the Committee but not have provided any privileged information, and both Defendants will have provided concededly nonprivileged documents and detailed lists of documents withheld on executive privilege grounds. But if no stay had been in place and the Court of Appeals affirmed, then the parties will have already identified the key substantive issues going forward, teeing up the final issues in this litigation for prompt resolution, without necessarily disclosing a single document over which privilege is claimed or a single arguably privileged subject being addressed by Ms. Miers during her testimony.

**IV.   The Public Interest Will Be Undermined by Issuance of the Stay.**

The Committee and the Nation deserve timely answers to the key questions that remain with regard to the White House's role in the forced resignations at issue and ultimately "whether improper partisan considerations have influenced prosecutorial discretion." Mem. Op. at 40. As noted, the Committee's Investigation began in February 2007 and the subpoenas that underlie this case were issued in June 2007, more than a year ago. Not only will further delay leave a cloud of doubt hanging over the administration of the criminal justice system, but it will also hinder Congress's ability to evaluate fully what legislative steps need to be taken to correct any

15

relevant problems it may identify. As each day passes, not only does the Committee's ability to obtain Ms. Miers's recollection of events dissipate, but also the Committee loses the ability to pursue promptly leads developed from that testimony and the wrongfully withheld documents. The Committee, the Congress and the Nation have the right to have this issue resolved. The Court's decision is eminently reasonable and measured and should further the parties along in their negotiations.

There simply is no countervailing interest on the side of Defendants. The public will not be injured in any way should Ms. Miers, a private citizen, appear before the Committee to testify. This claim is especially salient given the fact that no communication over which the President seeks to assert executive privilege is in immediate danger of being released, and certainly none "involve national security or foreign policy." Mem. Op. at 82. There simply is no threat of real harm to the President specifically or the public more generally. Thus, the Department offers no compelling reason that would tilt the balance of this inquiry in its favor.

## CONCLUSION

For the foregoing reasons the Court should deny Defendants Harriet Miers's and Joshua Bolten's motion for a stay pending appeal. Defendants do not meet any, let alone a greater balance of, the prerequisites for the granting of a stay.

Respectfully submitted,

/s/ Irvin B. Nathan
IRVIN B. NATHAN, D.C. Bar # 90449
General Counsel
KERRY W. KIRCHER, D.C. Bar # 386816
Deputy General Counsel
CHRISTINE M. DAVENPORT
Assistant Counsel
JOHN D. FILAMOR, D.C. Bar # 476240

                                                Assistant Counsel
                                                RICHARD A. KAPLAN, D.C. Bar # 978813
                                                Assistant Counsel
                                                KATHERINE E. MCCARRON, D.C. Bar # 486335
                                                Assistant Counsel

                                                Office of General Counsel
                                                U.S. House of Representatives
                                                219 Cannon House Office Building
                                                Washington, D.C. 20515
                                                (202) 225-9700 (telephone)
                                                (202) 226-1360 (facsimile)

                                                Counsel for Plaintiff Committee on the Judiciary
                                                of the U.S. House of Representatives

Dated: August 14, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMITTEE ON THE JUDICIARY,<br>UNITED STATES HOUSE<br>OF REPRESENTATIVES,<br><br>          *Plaintiff*,<br><br>      v.<br><br>HARRIET MIERS, *et al.*<br><br>          *Defendants*. | Case No. 1:08-cv-00409 (JDB) |

**PROPOSED ORDER DENYING DEFENDANTS' MOTION
FOR A STAY OF THE COURT'S JULY 31, 2008 ORDER PENDING APPEAL**

UPON CONSIDERATION of Defendants' Motion for a Stay of the Court's July 31, 2008 Order Pending Appeal, the opposition thereto, and the entire record herein, it is hereby

ORDERED that the Motion for a Stay of the Court's July 31, 2008 Order Pending Appeal is DENIED.

_____
John D. Bates
United States District Court Judge

Date: _____ \_\_\_\_\_, 2008