UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMITTEE ON THE JUDICIARY, UNITED STATES HOUSE OF REPRESENTATIVES, <br><br> Plaintiff, <br><br> v. <br><br> HARRIET MIERS and JOSHUA BOLTEN, in his capacity as custodian of White House records, <br><br> Defendants. | Civil Action No. 1:08cv00409 (JDB) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR A STAY OF THE COURT'S JULY 31, 2008 ORDER [48] PENDING APPEAL**

**PRELIMINARY STATEMENT**

A stay pending the expedited appeal sought in this extraordinary case is warranted under the traditional factors governing stay motions: the Court already has recognized the novel and difficult nature of several of the questions involved in this inter-branch dispute (including the threshold questions, such as whether there is a cause of action to maintain this action, which the Court of Appeals would have to resolve in the Committee's favor even to reach the ultimate immunity issue); absent a stay defendants will suffer the *irreparable* harm of being deprived of a meaningful opportunity to appeal this Court's ruling altogether; the Committee will not suffer any *irreparable* harm from expedited appellate consideration of the Court's Order; and granting a stay is clearly in the public's interest because, as the Court itself recognized, any decision on the issues presented could forever alter the separation of powers, and a stay would create the most favorable dynamic for fostering an inter-branch accommodation of this dispute. See Mem. Op. [49] at 72.

Largely ignoring the traditional factors governing stay motions, the Committee makes a number of misguided arguments. First, the Committee attempts to recast the standard for granting

a stay altogether, arguing that defendants bear the burden of showing "a mathematical probability" that they will succeed on appeal. But the D.C. Circuit expressly rejected that standard long ago, holding that if the balance of equities favors maintaining the status quo, then a stay is appropriate if a "serious legal question" is presented on appeal. At a minimum, the threshold questions concerning the existence of jurisdiction and the availability of a cause of action, not to mention the Court's resolution of the parties' claims on the merits, present substantial and important questions justifying a stay. The Committee is also quite wrong to contend that questions relating to the Committee's standing and whether it has a cause of action are not presented by the appeal; as discussed below, see infra at 3-5, a review of the Court's Order necessarily implicates questions concerning the Court's Article III authority and the source of the Committee's asserted right to relief. And inasmuch as the Court's Order imposes immediate obligations on defendants in derogation of rights that cannot be vindicated at a later time, it is appealable both as an injunction and a collateral order, the Committee's arguments to the contrary notwithstanding.

Second, the Committee attempts to recast the constitutional protection that defendants have invoked in this case, conflating a senior Presidential adviser's *immunity* from testimonial compulsion with the analytically different matter of the *assertion of privilege* on a question-by-question basis, and thus attempts to define away the irreparable harm to defendants if a stay is not granted. See, e.g., Opp'n [52] at 9, 11. The opportunity to assert privilege at a committee hearing, however, does not vindicate the immunity from testimonial compulsion that defendants assert. Moreover, the Committee fails to address the fact that, by appearing at a congressional hearing upon judicial order, Ms. Miers would risk forfeiting that immunity and thus the ability to seek meaningful relief on appeal. Cf. Population Inst. v. McPherson, 797 F.2d 1062, 1081 (D.C. Cir. 1986). The same is true regarding defendants' obligations with respect to documents.

Third, the Committee resists a stay by arguing that "precious time will be lost" if the Court's Order is not given immediate effect. Opp'n at 15. But that claimed harm is not *irreparable*; will be minimized by the expedited appellate schedule defendants have sought; is attributable in principal part to the Committee's own months-long delay in bringing this action; and would be significantly outweighed by the *irreparable* harm to defendants if a stay is not granted. In any event, the Committee contends that nothing prevents it from pursuing its inquiry anew even if the issues are not resolved until after the close of this Administration. See id.

Finally, the public interest weighs heavily in favor of a stay. Requiring immediate compliance with the Court's Order could forever alter the separation of powers, before appellate review has been completed. Moreover, at this point, a stay pending appeal would create the best hope for a negotiated resolution to this inter-branch standoff. At the suggestion of the Counsel to the President, see Ex. 1 (Aug. 8, 2008 Letter from Fred F. Fielding to Hon. John Conyers, Jr.), representatives of the parties have been meeting to discuss the possibilities for reaching an accommodation of this matter. Absent a stay pending an expedited appeal, the Committee will have little incentive to compromise its demands. Indeed, if under compulsion of the Court's Order, Ms. Miers must soon testify before the Committee, and defendants have court-compelled obligations over the withheld documents, then the Committee will effectively obtain everything it has sought in the litigation to date, and there will be no ground for negotiation and accommodation.

For these and the reasons set forth in defendants' opening brief, the Court should grant a stay pending appeal.

**ARGUMENT**

**I.   This Case Presents Important And Difficult Legal Questions Of First Impression Regarding The Constitutional Separation Of Powers.**

The Committee first argues that defendants cannot establish a likelihood of success on appeal

because, it argues, defendants cannot establish a "mathematical probability" that they will prevail in the Court of Appeals. However, the D.C. Circuit long ago held that a "court is *not* required to find that ultimate success by the movant is a mathematical probability" in order to enter a stay. Washington Metropolitan Area Transit Comm'n v. Holiday Tours. Inc., 559 F.2d 841, 843 (1977) (emphasis added). Rather, "[a]n order maintaining the status quo is appropriate when a serious legal question is presented" and the balance of equities favors a stay. Id. at 844. As the Court of Appeals explained, "[p]rior recourse to the [district court] would hardly be required as a general matter if it could properly grant interim relief only on a prediction that it has rendered an erroneous decision." Id.

This Court ruled on a number of "difficult legal question[s]," id. at 844-45, most of which the Committee ignores, and any one of which, if resolved in defendants' favor, would require that the Court's Order be vacated. For example, the Court's Order necessarily raises substantial threshold questions about whether the Committee has any right of action to maintain this suit. Indeed, this Court itself acknowledged that other courts (including circuit courts) have stated that a cause of action does *not* exist under the Declaratory Judgment Act. That question—along with the other threshold questions of Article III jurisdiction and whether this Court appropriately exercised its discretion to entertain any proper claim—are inextricably intertwined with the validity and propriety of the Court's Order. Indeed, just two Terms ago in Wilkie v. Robbins, 127 S. Ct. 2588, 2608 (2007), the Supreme Court held that there is appellate jurisdiction over the question whether a cause of action exists at all in reviewing an interlocutory appeal from the denial of an immunity claim. Thus, a review of the Court's Order necessarily implicates substantial questions about the Court's authority and the source of the Committee's asserted right to relief, which must be considered if appellate review in this instance is to be meaningful. A review of the Court's

authority to issue the Order, therefore, is "necessary to ensure meaningful review" of paragraphs 3 and 4 of the Order. Swint v. Chambers Cty. Comm'n, 514 U.S. 35, 51 (1995). Those issues are certainly substantial here, weighing in favor of a stay.

Largely overlooking these three independent and potentially dispositive issues, the Committee focuses on the question of absolute immunity, stressing that not "a single judicial opinion . . . recognizes absolute immunity for senior presidential advisors in this or any other context." Opp'n at 5. But the converse is also true: not a single judicial ruling has ever required a senior Presidential adviser to appear before a Congressional committee. See Nixon v. Fitzgerald, 457 U.S. 731, 743 (1982) (interlocutory appeal on immunity question justified when the Supreme Court never addressed the matter at issue); Ctr. for Int'l Environ. Law v. Office of the United States Trade Rep., 240 F. Supp. 2d 21, 22 (D.D.C. 2003) (issuing stay where case presented matter of first impression). As defendants explained, "[t]he President's ability to withhold information *from Congress* implicates different constitutional considerations than the President's ability to withhold evidence in *judicial proceedings*." In re Sealed Case, 121 F.3d 729, 753 (D.C. Cir. 1997) (emphasis added). That distinction raises a substantial case on the merits of the immunity claim, and, in addition to the threshold questions, supports preservation of the status quo pending appellate review.

The Committee's contention that defendants have no likelihood of success on appeal because the D.C. Circuit lacks jurisdiction to review this Court's order is also without merit. The Court's order is appealable as an injunction under 28 U.S.C. § 1292(a)(1) because it holds that Ms. Miers is "legally required" to appear and testify before the Committee. Order [48] ¶ 3. As the Court's opinion makes clear, the necessary implication of this command is that Ms. Miers "must appear before the Committee to provide testimony." Mem. Op. [49] at 12. The Committee tries to have it both ways, on the one hand emphasizing that the order is styled in "declaratory" terms, and on the

other hand contending that Ms. Miers and the Administration should "now comply with the law, as declared by the Court, without a further order." See Opp'n at 7 n.6. In other words, as the Committee implicitly acknowledges, the Court's order has the practical effect of an injunction.

The Court's order is thus appealable as an injunction. As the Court of Appeals has stressed, if an order "looks like an injunction and acts like an injunction, it's an injunction—at least for jurisdictional purposes." Cobell v. Kempthorne, 455 F.3d 317, 322 (D.C. Cir. 2006), cert denied, 127 S. Ct. 1876 (2007). Likewise, there is no serious question that, in these circumstances, the Court's order requiring defendants to disclose any unprivileged documents and a "specific description" of privileged documents is an appealable injunction. See Order [48] ¶ 4. If the Court did not intend its order to have injunctive effect, defendants respectfully request that the Court so clarify and make explicit that, for example, Ms. Miers is not actually obligated to appear before the Committee until further order of this Court. In the meantime, all parties regard the order as injunctive in both practical and legal effect, and defendants are entitled to seek appellate review at this time on that ground.

In any event, the Court's order is also appealable under the collateral order doctrine for the same reason that denials of other claims of absolute or qualified immunity are appealable. See, e.g., Mitchell v. Forsyth, 472 U.S. 511, 525-26 (1985). Here, those concerns are exacerbated. The Supreme Court has counseled that "special solicitude" is owed to "claims alleging a threatened breach of essential Presidential prerogatives under the separation of powers," Fitzgerald, 457 U.S. at 743, and thus has consistently recognized that "serious and unsettled" matters of immunity present immediately "appealable questions." Id. The Committee does not dispute that once Ms. Miers appears and testifies her claim of immunity will be lost, and the Committee's suggestion that "the issue of absolute immunity effectively will be reviewable on appeal from a final judgment," Opp'n

at 8, is difficult to fathom. Nor is there any merit to the Committee's contention that the collateral order doctrine is unavailable because the question of Ms. Miers's immunity is, in a sense, "the merits" of the case. Opp'n at 8 n.7. That is no less true in the context of qualified immunity, where it is firmly established that orders denying immunity are immediately appealable. See Mitchell, 472 U.S. at 527-28. Indeed, the Supreme Court has repeatedly stated that the first question in resolving a claim of qualified immunity is "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all,'" Wilson v. Layne, 526 U.S. 603, 609 (1999) (citation omitted), an inquiry that directly concerns the merits of the case.

The Committee's final argument—that appellate review is unavailable because the claim of immunity is not sufficiently "substantial"—is equally baseless. As the Court's opinion recognizes, the question whether Congress can compel senior Presidential advisers to appear at its behest and testify under oath raises "important separation of powers concerns" and has grave ramifications for "the balance between the political branches in this and future settings." Mem. Op. [49] at 20, 72. That is quintessentially the type of claim that the Court of Appeals should have the opportunity to consider.

## II.    Denying A Stay Would Inflict Irreparable Harm Because It Would Deprive Defendants Of Effective Appellate Review.

In disputing the irreparable harm that defendants would suffer without a stay, the Committee ignores the manifest injury to defendants if they are deprived of a meaningful right of appeal, and characterizes defendants' sole concern as a "long range" diminution of presidential autonomy that will not come to pass if defendants prevail on appeal. Opp'n at 9. But as defendants have established, the Court of Appeals cannot wind back the clock to prevent Ms. Miers from testifying, or to relieve the Executive from court-ordered obligations over withheld documents, if the Court's Order is not stayed. See Cheney v. United States Dist. Ct. for the Dist. of Columbia, 542 U.S. 367,

385 (2004). Because any appeal would provide less than full relief once Ms. Miers testifies, or documents or their content are disclosed, irreparable harm to the defendants in this case is assured without a stay. See Ctr. for Int'l Environ. Law, 240 F. Supp. 2d at 23.

By the same token, the Committee is misguided when it contends that "Ms. Miers . . . is not irreparably injured because, even though she is obligated to appear before the Committee, she still may, as both the Committee and the Court have acknowledged . . . assert executive privilege where appropriate." Opp'n at 11. The right to assert privilege and the assertion of absolute immunity are distinct means by which to protect Presidential prerogatives. Thus, whether or not Ms. Miers asserts executive privilege at any Committee hearing, an *immunity* from compelled testimony would be lost.[1] The voluntary appearances of presidential advisers in the past, see Opp'n at 12, do not prove otherwise, for as acts of accommodation they did not threaten the autonomy of presidential advisors and the presidency in the way that *compelled* testimony does.

**III. A Stay Pending an Expedited Appeal Will Not Substantially—Much Less Irreparably—Harm the Committee.**

By contrast, the Committee does not face any irreparable harm if a stay pending appeal is granted. The Committee argues that a stay would be detrimental to the expeditious pursuit of its investigation, but such delay is hardly irreparable. Moreover, any such harm is attributable in principal part to the Committee's own months-long delay in bringing this action. In addition, as noted, defendants have filed a motion for expedition, which, if granted, should result in the completion of briefing and argument in November, thus significantly mitigating any harm the Committee might suffer from delay. Indeed, it is the Committee's position that it can continue to

---

[1] As a result, the justification for permitting a stay in this case is precisely that in "traditional immunity cases." Opp'n at 11. As with the party claiming immunity from civil trials, Ms. Miers "no longer has *any* protection" to her asserted right to be free from any obligation to testify upon compulsion. Id.

pursue its investigation even after this Administration leaves office (if it so chooses), see Opp'n at 15, and on the basis of the Committee's findings the Congress could enact any legislation it deemed advisable. (In fact, given Congress's calendar, any pursuit of *legislation* based on the Committee's finding would almost necessarily have to occur after this Administration ends.) Because the Committee's asserted harms are not irreparable, they cannot "outweigh" the *truly irreparable* harm that defendants will incur—deprivation of a meaningful appeal—if a stay is not granted. See Ctr. for Int'l Environ. Law, 240 F. Supp. 2d at 23.

**IV.    The Public's Interest Would Be Well-Served By A Stay.**

The public interest is undeniably well-served by deliberative consideration of the issues presented on appeal. Absent a stay, the opportunity for a meaningful appeal—and the public's interest in another review of the issues presented on appeal—could be foreclosed altogether. Giving effect to this Court's Order could irretrievably alter the constitutional balance of the separation of powers. At a minimum, before that balance is disrupted, the public should be permitted a full airing of the important and difficult issues presented by this case before the Court of Appeals.

A stay is also in the public interest because at this time it represents the best hope of promoting an accommodation between the two branches. Following the suggestions of both the Committee and the Counsel to the President, see Ex. 1; Defs.' Stay Mot., Ex. 1, the parties' representatives have recommenced discussions in an effort to reach an accommodation of both branches' interests in this matter. Yet, if under compulsion of the Court's order, Ms. Miers must soon testify before the Committee, and defendants have court-compelled obligations over the withheld documents, then the Committee will effectively obtain everything it has sought in the litigation to date, and there will be no ground for negotiation and accommodation. Indeed, absent a stay the Committee will have little incentive to compromise the demands it has made of

defendants, no matter what concessions defendants might offer in the accommodation process, and the prospect for reaching accommodation will be substantially diminished.

## CONCLUSION

For the foregoing reasons and those set forth in defendants' opening brief, the Court should grant Defendants' Motion for a Stay of the Court's Order [48] Pending Appeal.

Dated: August 18, 2008      Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

CARL J. NICHOLS
Principal Deputy Associate Attorney General

JOHN C. O'QUINN
Deputy Assistant Attorney General

JOSEPH H. HUNT
Director, Federal Programs Branch

/s/
JOHN R. TYLER (D.C. Bar No. 297713)
JAMES J. GILLIGAN (D.C. Bar No. 422152)
NICHOLAS A. OLDHAM (D.C. Bar No. 484113)
HELEN H. HONG (CA SBN 235635)
STEPHEN J. BUCKINGHAM
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, DC  20530
Telephone: (202) 514-2356
Email: John.Tyler@usdoj.gov

ATTORNEYS FOR DEFENDANTS

# EXHIBIT 1

THE WHITE HOUSE

WASHINGTON

August 8, 2008

Dear Chairman Conyers:

Thank you for your letter of August 1, 2008, following the July 31 decision of the U.S. District Court in *Committee on the Judiciary, U.S. House of Representatives v. Miers*, Civ. No. 08-0409 (JDB), concerning the immunity of close Presidential advisors from appearance in response to Congressional subpoenas.

As I know you appreciate, this litigation is very important in determining constitutional contours governing certain relations between the Executive and Legislative Branches in the Congressional oversight setting. Accordingly, the Department of Justice has now filed an appeal in this matter, and is also seeking a stay of the decision pending review by the U.S Court of Appeals for the D.C. Circuit. That course of action will provide appellate consideration of the novel questions at stake in this matter and will enable the parties to obtain, if it should prove necessary, a final decision in this important matter. Our stay request is necessary to make such an appeal meaningful.

However, the fact that the Executive has noticed an appeal in this matter does not signify that we think further litigation is the exclusive path forward. During the life of the 110th Congress, this Administration has responded to more than 650 Congressional inquiries and investigations, and through negotiation and accommodation with Congressional committees has been able to resolve all but a very few of them. This commitment to the accommodation process also obtains in the instant dispute, and we agree that such a process should continue simultaneously with the litigation. Toward that end, and hopefully as a prelude to meaningful discussions between us, I propose that members of our respective staffs meet as early as next week to re-commence discussing possibilities for reaching an accommodation between the Branches in this matter. In anticipation of your agreement I have asked Emmet Flood, Special Counsel to the President, to reach out to Committee counsel as soon as possible.

With kind regards,

Sincerely,

Fred F. Fielding
Counsel to the President

The Honorable John Conyers, Jr.
Chairman
Committee on the Judiciary
United States House of Representatives
Washington, D.C. 20515


cc:     The Honorable Lamar Smith