## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

COMMITTEE ON THE JUDICIARY,
U.S. HOUSE OF REPRESENTATIVES,

Plaintiff,

v.                                                          Civil Action No.  08-0409 (JDB)

HARRIET MIERS, et al.,

Defendants.

## MEMORANDUM OPINION

This matter is now before the Court on defendants' (collectively referred to as "the Executive") motion for a stay pending their appeal of the Court's July 31, 2008 Order.  That Order provided that Harriet Miers, former White House Counsel, is not absolutely immune from compliance with congressional subpoenas and must therefore appear before the Committee on the Judiciary of the U.S. House of Representatives ("Committee") to provide testimony.  It also required that Ms. Miers and Joshua Bolten, current White House Chief of Staff, produce all non-privileged documents responsive to the Committee's subpoenas and provide a more specific description of any documents withheld on the basis of executive privilege than has to date been provided.  A stay of that Order is warranted, the Executive says, because it raises serious legal questions that merit appellate consideration and because, absent a stay, the Executive will be deprived of meaningful appellate review on the absolute immunity question.  The Committee responds that a stay is not appropriate because the Court's Order is not appealable and, in any event, the traditional criteria governing a stay pending appeal do not favor granting the

-1-

Executive's request here.  The Executive's motion is now fully briefed and ripe for resolution.

Finding the Committee's arguments persuasive, the Court will deny the Executive's motion for a

stay pending appeal.

## STANDARD OF REVIEW

The standard for granting a motion for stay pending appeal is well-established in this

Circuit.  To prevail on such a motion, a party must show:

> (1) that it has a substantial likelihood of success on the merits; (2) that it will suffer
> irreparable injury if the stay is denied; (3) that issuance of the stay will not cause
> substantial harm to other parties; and (4) that the public interest will be served by
> issuance of the stay.

United States v. Philip Morris, Inc., 314 F.3d 612, 617 (D.C. Cir. 2003) (citing Washington

Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977)).

Furthermore, the D.C. Circuit has explained that the "substantial likelihood of success" prong

does not necessarily imply that a party needs to demonstrate a 50% chance or better of prevailing

on appeal.  Holiday Tours, 559 F.2d at 844.  Instead, the moving party can satisfy that element by

raising a "serious legal question . . . whether or not [the] movant has shown a mathematical

probability of success."  Id.  Put another way, "it will ordinarily be enough that the [movant] has

raised questions going to the merits so serious, substantial, difficult and doubtful, as to make

them a fair ground for litigation and thus for more deliberative investigation."  Id. (quoting

Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953)).

## DISCUSSION

### I.     The Executive's Likelihood of Success on the Merits

The Executive has failed to demonstrate that it has a substantial likelihood of success on

the merits of the absolute immunity issue or that it has even raised a question "so serious, substantial, difficult and doubtful," id., as to warrant suspending the effect of the July 31st Order pending appeal.  To begin with, the Executive devotes almost the entirety of its briefing on this prong to arguing that the Court's Order is "susceptible to serious debate" concerning the threshold decisions relating to the Committee's standing and cause of action.  See Defs.' Mot. at 5-6.  But even assuming that the Executive's proposition were correct -- which it is not -- its reliance upon that point is misplaced.  The D.C. Circuit has explained that the stay pending appeal inquiry looks to the likelihood of success on the merits of the appeal itself, see Philip Morris, 314 F.3d at 617.  Here, however, the denial of the Executive's motion to dismiss is not presently subject to appeal because it is not a final order.  See Bombardier Corp. v. National R.R. Passenger Corp., 333 F.3d 250, 253 (D.C. Cir. 2003) ("[C]ourts of appeal have appellate jurisdiction over only 'final decisions' of the district courts.  28 U.S.C. § 1291 (2000). Ordinarily, orders denying motions to dismiss are not final decisions because such orders ensure that litigation will continue in the district court.").  Thus, issues relating to the denied motion to dismiss -- however important they may be -- do not factor into the likelihood of success on this appeal.[1]  Indeed, as the Committee aptly put it, "these [threshold] claims are not appealable at this stage of the litigation, and thus an appeal on these bases -- let alone a stay pending appeal -- is inappropriate."  Pl.'s Opp'n at 6 (footnotes omitted).

Turning to the absolute immunity question, then, the Executive states that "not a single judicial ruling has ever required a senior Presidential adviser to appear before a Congressional

---

[1] In any event, essentially for the reasons explained in the Court's July 31, 2008 Memorandum Opinion, the Court is not persuaded by the Executive's claim that it has a substantial likelihood of success on appeal of the preliminary justiciability questions.

-3-

committee." Defs.' Reply at 5.  That alone, the Executive contends, is sufficient to "raise[] a

substantial case on the merits of the immunity claim, . . . [which] supports preservation of the

status quo pending appellate review." Id.  The Court disagrees.  As previously noted, "the

asserted absolute immunity claim here is entirely unsupported by existing case law." Comm.

Judiciary, U.S. House of Representatives v. Miers, 558 F. Supp. 2d 53, 99 (D.D.C. 2008).

Moreover, in Harlow v. Fitzgerald, 457 U.S. 800 (1982), the Supreme Court rejected the notion

that senior presidential advisors -- unlike the President himself -- are absolutely immune from

suits for money damages arising out of their official conduct.  Id. at 807.  And because the

Executive offers no additional basis distinct from the justifications for absolute immunity already

rejected by the Supreme Court there, this Court noted that "[t]here is nothing left to the

Executive's primary argument in light of Harlow." Miers, 558 F. Supp. 2d at 101.  The

Executive offers no reason to disturb that conclusion.  Without any supporting judicial precedent

whatsoever -- and, indeed, in the face of Supreme Court case law that effectively forecloses the

basis for the assertion of absolute immunity here -- it is difficult to see how the Executive can

demonstrate that it has a substantial likelihood of success on appeal, or even that a serious legal

question is presented.  The Executive's argument boils down to a claim that a stay is appropriate

because the underlying issue is important.  But that is beside the point and does not demonstrate

a likelihood of success on the merits.  Simply calling an issue important -- primarily because it

involves the relationship of the political branches -- does not transform the Executive's weak

arguments into a likelihood of success or a substantial appellate issue.  Hence, the Court

concludes that this prong of the stay pending appeal analysis cuts strongly in favor of the

Committee.

## II.    The Executive's Asserted Irreparable Injury

The Executive next insists that it will suffer serious irreparable injury absent a stay in this case because it will be denied the opportunity for meaningful appellate review.  That is so, the argument goes, because "the Court of Appeals cannot wind back the clock to prevent Ms. Miers from testifying, or to relieve the Executive from court-ordered obligations over withheld documents, if the Court's Order is not stayed."  Defs.' Reply at 7.  Although there is some merit to the Executive's asserted harm, there are several factors that mitigate the extent of any injury incurred by the Executive.

Declining to grant a stay here, the Executive contends, "would impose the very harm -- compelled appearance of the President's closest advisors -- that the defendants say the Constitution prohibits, and which they seek to appeal."  Defs.' Mot. at 8.  And once Ms. Miers appears to testify, the Executive argues, "her claim of immunity will be lost."  Defs.' Reply at 6. That is only partially true, however.  The Executive is correct insofar as the prospect of appellate review <u>prior</u> to Ms. Miers appearing is significantly diminished absent a stay.[2]  But that does not preclude the Executive from preserving that argument for subsequent appeal.  Ms. Miers could, for instance, appear to testify before the Committee but explain that she is doing so under protest and that it is the Executive's position that she remains absolutely immune from compulsory congressional process.  That would seem to preserve the absolute immunity issue for ultimate appellate consideration; indeed, that is consistent with the familiar method of objecting to evidentiary rulings at trial, for example, in order to preserve a trial court's initial decision for

---

[2] Although there is some question as to whether the Executive's current appeal would be mooted on the immunity question if Ms. Miers were to testify before appellate review, this situation may be one capable of repetition yet evading review.

appellate consideration.  So long as there is ultimately a privilege issue in dispute, then, the

Executive can continue to assert its claim to absolute immunity.[3]  And because Ms. Miers

remains fully capable of asserting executive privilege on a question-by-question basis, there is no

risk whatsoever that any confidential or privileged information will be disclosed during the

course of her testimony.

Thus, the only "harm" that is truly irreparable is the mere fact that Ms. Miers must appear

before the Committee.  The Executive seizes on that and likens this situation to a denial of

qualified immunity from trial, which "generally constitute[s] irreparable injury . . . because of the

irretrievable loss of immunity from suit."  McSurely v. McClellan, 697 F.2d 309, 317 n. 13 (D.C.

Cir. 1982).  But that overlooks the significant differences between absolute or qualified immunity

from a civil damages lawsuit and the Executive's asserted immunity from congressional

testimony here.  Immunity from damages in a civil suit entails immunity from the entire process

of litigation: lengthy (and costly) pre-trial discovery, depositions, and ultimately trial itself, as

well as any damages.  Taken together, those obligations amount to a significant burden on a

government official and all of those costs will have been incurred for no reason in the event that

the defendant is ultimately found to enjoy immunity.  See Mitchell v. Forsyth, 472 U.S. 511, 526

(1985) ("[T]he 'consequences' [of litigation against governmental officials] with which we were

concerned in Harlow are not limited to liability for money damages; they also include 'the

general costs of subjecting officials to the risks of trial -- distraction of officials from their

---

[3] Upon a subsequent appeal in this setting, for instance, the D.C. Circuit could decline to address the merits of any particular assertion of executive privilege under the In re Sealed Case, 121 F.3d 729 (D.C. Cir. 1997), framework and hold instead that because Ms. Miers was absolutely immune from congressional testimony, she was therefore not required to respond at all, thereby effectively sustaining all privilege claims.

governmental duties, inhibition of discretionary action, and deterrence of able people from public service.' . . . Indeed, <u>Harlow</u> emphasizes that even such pretrial matters as discovery are to be avoided if possible, as 'inquiries of this kind can be peculiarly disruptive of effective government.'") (quoting <u>Harlow</u>, 457 U.S. at 816-17).

The same is not true of compelled congressional testimony.  To begin with, the Executive has not identified any case law that indicates that <u>any</u> individual is immune from compliance with congressional subpoenas and, generally speaking, citizens have an "unremitting obligation to respond to [congressional] subpoenas, to respect the dignity of the Congress and its committees and to testify fully with respect to matters within the province of proper investigation."  <u>Watkins v. United States</u>, 354 U.S. 178, 187-88 (1957).  Moreover, Ms. Miers will only be required to reserve several hours for her testimony as opposed to the several months (or even years) required for trial preparation and trial.  The burden -- and associated harm to Ms. Miers personally -- is significantly less in this case than in the context of denying a defendant immunity from money damages (and trial).  Moreover, any harm to the Executive's asserted institutional interest in "autonomy" is also minimal.  Senior presidential advisors frequently appear voluntarily to provide testimony before Congress on sensitive issues.  The Executive is not prevented, however, from asserting absolute immunity in response to specific future congressional subpoenas directed towards senior presidential advisors.  And the mere fact that a single presidential aide testified before Congress consistent with a district court order will not preclude the Executive from asserting absolute immunity prospectively in the event that the D.C. Circuit reverses this Court's absolute immunity holding and concludes that senior advisors are

entitled to such protection.[4]

There is even less harm associated with turning over unprivileged documents and producing a description of items withheld on the basis of executive privilege. To begin with, the Executive has not asserted absolute immunity in response to the document production requested by the congressional subpoenas. Thus, the Executive has supplied no justification, and the Court cannot fathom one, for its failure to produce non-privileged documents to the Committee. Moreover, the Court did not order the Executive to turn over any privileged documents; the Order merely directed the Executive to identify the documents withheld on the basis of executive privilege with sufficient specificity to enable evaluation of any privilege claims in this ensuing litigation. In that sense, the present posture is closely analogous to the situation in Jewish War Veterans of the United States of Am. v. Gates, 2008 WL 2185333 (D.C. Cir. May 6, 2008). There, the D.C. Circuit dismissed an appeal filed by Members of Congress because this Court's "decision did not order the disclosure of any particular document to which a Speech or Debate Clause objection had been made. It simply sketched a framework of the Speech or Debate Clause." Id. at *1. Hence, because the Members had so far "in the litigation . . . not claimed that any particular document is privileged," and the district court had not yet reviewed any specific assertion of privilege, the D.C. Circuit dismissed the appeal for lack of jurisdiction. Id. The same would appear to be true here, which suggests that the Executive's asserted harm with respect to the document production -- loss of appeal rights -- is not a persuasive reason to grant a

---

[4] If the D.C. Circuit upholds this Court's decision, no violence will have been done to the Executive's institutional interests because Ms. Miers will have merely complied with her legal obligations.

stay because the Executive likely has no appeal rights at this juncture to begin with.[5]

In sum, the Executive has identified <u>some</u> harm that it may suffer if a stay is not granted

in this matter.  But that harm is mitigated by the following factors: (1) the Executive can likely

appeal the absolute immunity issue at a later stage; (2) the personal harm accruing to Ms. Miers

from simply appearing to testify before the Committee is minimal; and (3) the Executive's

institutional interests will be safeguarded by invocation of executive privilege where appropriate

and by the fact that it may continue to assert absolute immunity in response to other

congressional subpoenas.  These several countervailing considerations mitigate the severity of

the Executive's putative harm.  <u>See</u> <u>Wisc. Gas Co. v. FERC</u>, 758 F.2d 669, 674 (D.C. Cir. 1985)

("First, the injury must be both certain and great. . . . 'The possibility that adequate compensatory

or other coercive relief will be available at a later date, in the ordinary course of litigation weighs

heavily against a claim of irreparable harm.'") (quoting <u>Virginia Petroleum Jobbers Ass'n v.</u>

---

[5] Similarly, the Committee contends that the absolute immunity question is not appealable at this time because the Court's Order is not final for purposes of 28 U.S.C. § 1291 nor, does it "qualify as an 'injunction' for purposes of 28 U.S.C. § 1292(a)(1)" because it is a mere declaration.  <u>See</u> Pl.'s Opp'n at 7.  The Executive responds that although the Order is styled as a declaration, it has the practical effect of an injunction.  Moreover, the Executive maintains, just as denials of qualified immunity are immediately appealable under <u>Mitchell</u>, 472 U.S. at 530, so too should this Court's denial of the Executive's asserted absolute immunity be immediately appealable.  The Court is not persuaded by the latter point.  As noted above, immunity from the entire process of litigation involves a different set of concerns than does immunity from a single congressional appearance.  More importantly, <u>Mitchell</u> and its ilk involve <u>recognized</u> claims of immunity; as repeatedly noted, the absolute immunity claim asserted here is not supported by any logic or precedent.  The Executive's injunction argument, however, has some force.  The Order does indicate that Ms. Miers is "legally required to testify."  <u>See</u> Order ¶ 3.  The D.C. Circuit has stated that if an order "looks like an injunction and acts like an injunction, it's an injunction -- at least for jurisdictional purposes."  <u>Cobell v. Kempthorne</u>, 455 F.3d 317, 322 (D.C. Cir. 2006).  Thus, to the extent that this Court's Order obligates Ms. Miers to appear before the Committee, it at least arguably functions as an injunction for jurisdictional purposes even though the Court only issued a declaratory judgment.  In any event, this is a close enough question that the Court will assume that this aspect of the Order is appealable as an injunction.

FPC, 259 F.2d 921, 925 (D.C. Cir. 1958)).  This prong of the stay analysis may therefore tip in favor of the Executive, but only very marginally so.

### III.    The Committee's Asserted Substantial Harm

The Committee has demonstrated that it will suffer substantial harm if a stay is granted -- namely, that issuing a stay of this proceeding would "likely permit [the Executive] to run out the clock on this Congress."  Pl.'s Opp'n at 13-14.  "That outcome," the Committee says, "would be extremely damaging to the Committee, as it seeks closure to this important Investigation prior to the end of the current Congress and Administration."  Id. at 14.  The Committee is correct.  Even if the D.C. Circuit were to accept the Executive's proposed expedited schedule, that "proposal only shaves 10 total days off the 84-day briefing schedule."  Id.  Moreover, in any event, it is exceedingly unlikely that the D.C. Circuit would decide this case prior to the expiration of this Congress once the time required for oral argument and crafting an opinion is factored into the equation.  Thus, even under the Executive's own asserted schedule, the Committee would very likely be denied the testimony of Ms. Miers, which it has deemed vital to its investigation, prior to the lapse of Congress and the accompanying expiration of the subpoenas.  The Executive attempts to brush this point aside, noting that the Committee claims that it can "pursue its investigation even after this Administration leaves office."  Defs.' Reply at 9.  But as this Court previously explained, it would be speculative at this juncture to predict how the incoming Congress and the new President will choose to proceed in this matter.  See Miers, 558 F. Supp. 2d at 97-98.  What is near certain, however, is that granting a stay would deprive this Congress of the information it seeks.  That rather plainly constitutes harm for purposes of this analysis.

The Executive launches three broad attacks against that conclusion, all of which are

unavailing.  First, the Executive says, that harm "is attributable in principal part to the Committee's own months-long delay in bringing this action."  Defs.' Reply at 8.  The Court disagrees.  As both sides are well aware, there must be a legitimate stalemate in the accommodations process before either side can seek relief before an Article III court.  The record establishes that the Committee attempted to seek a negotiated solution at each step along the way of this dispute; the Executive cannot now fault the Committee for taking the time necessary to do so.[6]  Next, the Executive takes the Committee to task for allegedly failing to establish that it will suffer any <u>irreparable</u> harm in the event that a stay is granted.  That argument is perplexing for two reasons.  To begin with, just as the D.C. Circuit cannot roll back the clock to prevent Ms. Miers from testifying, so too it cannot roll back the clock to prevent this Congress from lapsing in early January 2009.  Thus, to the extent that any injury to the Executive is truly irreparable, the Committee appears to have the same claim.[7]  More importantly, however, the Committee is <u>not</u> required to demonstrate that it will suffer <u>irreparable</u> injury in the event that a stay is granted.  Only the moving party is required to make that steep showing; the non-moving party (the Committee here) need only explain why it will suffer <u>substantial</u> harm.  <u>See</u> <u>Philip Morris</u>, 314 F.3d at 617.  The Executive's final argument suffers from a similar flaw.  It contends that any harm to the Committee does not "'outweigh' the *truly irreparable* harm that defendants will incur . . . if a stay is not granted."  Defs.' Reply at 9 (emphasis in original).  Once again,

---

[6] The Committee is also correct that, in apparent contrast to its posture for purposes of this motion, the Executive resisted the Committee's initial request to expedite consideration of this case.  <u>See</u> Defs.' Proposed Briefing Schedule Dckt. #12.

[7] Presumably, the Executive's point hinges on the incoming Congress electing to continue to pursue this matter.  But as explained above, that prospect is speculative at this juncture.

however, the Executive confuses the required showings here.  The Committee need not demonstrate that its harm strictly outweighs the Executive's proffered injury.  Instead, each factor in the stay analysis is simply part of the larger balance of equities in this inquiry, as to which the Executive bears the burden.  In short, the Court concludes that this factor strongly weighs in favor of the Committee's position.

## IV.     Public Interest Factors

According to the Executive, the public interest will be "well-served by deliberative consideration of the issues presented on appeal," Defs.' Reply at 9, because the questions raised implicate the constitutional structure of the federal government.  For its part, the Committee argues that the public interest would be best served by denying the stay so that it can complete its investigation into the forced resignations of the United States Attorneys and the alleged improper partisan influence over prosecutorial discretion.  Further delay, the Committee argues, will "leave a cloud of doubt hanging over the administration of the criminal justice system, . . . [and] will also hinder Congress's ability to evaluate fully what legislative steps need to be taken to correct any relevant problems it may identify."  Pl.'s Opp'n at 15-16.

Although there is some merit to both sides of this argument, the Committee ultimately has the better of the debate.  The Executive's asserted benefit to the public is the abstract vindication of separation of powers concerns that may come to pass by way of appellate consideration.  That is really no more than the assertion that the issues are "important" for purposes of the likelihood of success analysis.  The public's interest in the Committee completing its investigation, however, is more concrete.  Ms. Miers's testimony may help Congress finally determine what remedial legislative steps, if any, should be taken in response to

the forced resignations.  Moreover, the Executive's interests will retain protection even absent a stay.  As this Court has repeatedly indicated, Ms. Miers may invoke executive privilege as appropriate on a question-by-question basis.  That fact serves to safeguard the Executive's legitimate interest in confidentiality.

At worst, if the stay is denied but the D.C. Circuit subsequently reverses this Court's decision on absolute immunity, Ms. Miers will have appeared briefly before the Committee to testify as to non-privileged communications and assert privilege as to others.  No serious harm to either Ms. Miers or the Executive's institutional interests will occur due to that event.  On the other hand, if a stay is granted but the D.C. Circuit subsequently upholds the rejection of absolute immunity in this case, there is a very strong possibility that the Committee will be unable to complete its investigation before Congress expires.  That may leave important public concerns regarding the nation's federal criminal justice system unaddressed.  Hence, the Court concludes that the public interest is better served by denying a stay pending appeal in this case.

## CONCLUSION

A stay pending appeal is "an extraordinary remedy."  Cuomo v. U.S. Nuclear Regulatory Comm'n, 772 F.2d 972, 978 (D.C. Cir. 1985); see also Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) ("'It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'") (quoting 11A Wright, Miller, & Kane, Fed. Prac. & Proc. § 2948 (2d ed. 1995)).  Here, the Court concludes that the Executive has failed to satisfy its "obligation to justify the court's exercise of such an extraordinary remedy."  Cuomo, 772 F.2d at 978.  Of the four pertinent factors, only one -- the risk of irreparable injury -- favors the Executive's position

at all, and even then only marginally so.  The other three factors strongly tip in favor of the Committee, which demonstrates that the balance of equities does not warrant granting a stay pending appeal in this case.

Accordingly, the Court will deny the Executive's request for a stay.  Hence, the Executive should respond to the document aspect of the subpoenas by producing non-privileged material and identifying more specifically the materials it is withholding on a claim of executive privilege. But it is on Ms. Miers's appearance that the dispute principally focuses.  This decision should not, however, foreclose the parties' continuing attempts to reach a negotiated solution.  Both sides indicated that discussions regarding an accommodation have resumed.  Unfortunately, in response to the Court's inquiry, each party also argued that the other side would have no incentive to continue negotiating in good faith absent a prompt decision on this motion in its favor.  Had the litigants indicated that a negotiated solution was foreseeable in the near future, the Court may have stayed its hand in the hope that further intervention in this dispute by the Article III branch would not be necessary.  As it stands, however, the Court must decide the questions presented to it.  But there is still ample time for the parties to reach an accommodation. The Court's July 31, 2008 Order does not compel Ms. Miers to appear at any particular date. Although the Court is not aware of a specific date set for Ms. Miers's hearing, it appears that any such event will not take place until later in September.  See Defs.' Mot. Ex. 2 (inquiring as to Ms. Miers's availability in September).  The Court once again urges the political branches to resolve this dispute without the need for further recourse to the judicial branch.

For the foregoing reasons, the Court will deny the Executive's motion for a stay pending appeal.  A separate Order accompanies this Memorandum Opinion.

-14-

_____
/s/
JOHN D. BATES
UNITED STATES DISTRICT JUDGE

Date: August 26, 2008